## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| OHIO EDISON COMPANY, <br> 76 South Main Street <br> Akron, Ohio 44308 | ) <br> ) <br> ) <br> ) | CASE NO. |
| and | ) <br> ) | JUDGE |
| THE CLEVELAND ELECTRIC <br> ILLUMINATING COMPANY, <br> 76 South Main Street <br> Akron, Ohio 44308 | ) <br> ) <br> ) <br> ) <br> ) | **COMPLAINT** |
| Plaintiffs, | ) <br> ) <br> ) | |
| vs. | ) <br> ) | |
| DIRECT ENERGY BUSINESS, LLC, <br> 12 Greenway Plaza, Suite 250 <br> Houston, Texas 77046 | ) <br> ) <br> ) <br> ) | |
| Defendant. | ) | |

Plaintiffs, Ohio Edison Company ("OE") and The Cleveland Electric Illuminating Company ("CEI"), for their Complaint against Defendant, Direct Energy Business, LLC, state as follows:

1. OE and CEI (collectively, the "Companies") are Ohio corporations with their principal place of business located at 76 South Main Street, Akron, Ohio 44308.

2. Direct Energy Business, LLC is a Delaware limited liability company with its principal place of business located in Houston, Texas. On information and belief, Direct Energy Business, LLC's sole member is Direct Energy Services, LLC, a Delaware limited liability

company with its principal place of business located in Houston, Texas. On information and belief, the sole member of Direct Energy Services, LLC is Direct Energy Marketing, Inc., a Delaware corporation with its principal place of business in Stamford, Connecticut.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there exists a diversity of citizenship and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

4. This Court has personal jurisdiction over Direct Energy.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) and 1391(c).

## FACTS

6. Direct Energy Business, LLC ("Direct Energy") is engaged, *inter alia*, in the business of selling and supplying electricity for delivery to customers in the United States and Canada. Direct Energy is certified by the Public Utilities Commission of Ohio ("PUCO") as a competitive retail electric service supplier ("Certified Supplier") to supply retail electric generation service to retail customers in the state of Ohio.

7. The Companies are electric distribution utilities operating in the state of Ohio that are responsible, *inter alia*, for distributing to retail electric service customers the electricity that is generated by Certified Suppliers such as Direct Energy.

8. Retail customers in Ohio may shop for electric generation service from Certified Suppliers. Regardless of which Certified Supplier provides electric generation service to a customer, distribution service is provided by electric distribution utilities such as the Companies.

9. Certified Suppliers participate in a wholesale energy market operated by PJM Interconnection LLC ("PJM"), a retail transmission organization responsible for coordinating the movement of wholesale power in the Companies' service territories and in other states. The energy Certified Suppliers sell to retail customers is sold into and purchased from PJM's wholesale market. PJM "settles" these purchases and sales among the various Certified Suppliers by relying upon, among things, retail customer energy usage data provided to PJM by the Companies.

10. The basic requirements governing the Companies' provision of this retail customer usage data to PJM are set out in the Companies' PUCO-approved Electric Generation Supplier Coordination Tariffs ("Ohio Tariffs"). The Ohio Tariffs set forth the basic requirements for coordination and cooperation between the Companies and Certified Suppliers necessary to ensure that Certified Suppliers can deliver service to their retail customers.

11. Under the Ohio Tariffs, the Companies on a regular basis submit aggregate data of each customer's actual electricity usage to PJM so that PJM may charge the responsible Certified Supplier for energy used by those customers. When a customer switches service from one Certified Supplier to another, the load of that customer and the Certified Supplier's obligation to pay for that load also should transfer.

12. At various times in 2013 and 2014, three retail customers – two in CEI's service territory and one in OE's service territory – switched their retail electric generation service from an existing Certified Supplier (the "Harmed Supplier") to Direct Energy.

13. When these switches occurred, the Companies' computer system continued to report the switching customers' retail load obligation data to PJM as still associated with the Harmed Supplier instead of associating the customers' load with Direct Energy (the "Supplier

Mismatch Issue"). This Supplier Mismatch Issue continued until discovered and corrected by the Companies in late 2015.

14. PJM relied on this incorrect data to charge the Harmed Supplier a total of $5,602,981.39 for energy that should have been charged to Direct Energy. At the same time, Direct Energy received revenues from these new retail customers but incurred no corresponding market costs from PJM.

15. After discovering the error, the Companies immediately sought resettlement to make whole the Harmed Supplier and ensure that Direct Energy paid for the services it received from PJM.

16. On January 27, 2017, each of the Companies and the Harmed Supplier entered into separate settlement and release agreements whereby, among other things, the Harmed Supplier agreed to assign and transfer to the Companies all of its right, title, and interest in any potential claims it had in connection with the Supplier Mismatch Issue, including but not limited to the unjust enrichment claim asserted against Direct Energy below, in exchange for good and valuable consideration.

17. The Companies contacted Direct Energy on numerous occasions seeking the resettlement of $5,602,981.39 that should have been paid to PJM, but Direct Energy has refused to pay for the services that were incorrectly charged to the Harmed Supplier.

**COUNT ONE - UNJUST ENRICHMENT**

18. The Companies incorporate the allegations of paragraphs 1 through 17 as if fully rewritten herein.

19. The Harmed Supplier conferred a benefit upon Direct Energy by paying for Direct Energy's load costs in the amount of $5,602,981.39, for which Direct Energy has not paid.

20. Direct Energy knew that it was obligated to pay for its actual customer load, and Direct Energy knew that it received a $5,602,981.39 windfall by not paying for its actual customer load that was paid for by the Harmed Supplier.

21. It is unjust and inequitable for Direct Energy to retain a $5,602,981.39 windfall, and correspondingly unjust and inequitable for the Harmed Supplier to have paid this amount for energy used by Direct Energy's customers.

22. Direct Energy has been unjustly enriched in the amount of $5,602,981.39, which Direct Energy should be required to pay to the Companies as the successor-in-interest to the Harmed Supplier via its assignment of claims to the Companies.

WHEREFORE, the Companies demand judgment in their favor as follows:

A. Compensatory damages in an amount to be determined at trial, but in no event less than $5,602,981.39, plus interest and costs.

B. Their costs, reasonable attorneys' fees, and any other, further or additional relief to which the Companies may be entitled.

Respectfully Submitted,

*/s/ James F. Lang*
James F. Lang (0059668)
Mark T. Keaney (0095318)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114
(216) 622-8200
(216) 241-0816 (fax)
jlang@calfee.com
mkeaney@calfee.com

*Attorneys for Plaintiffs, Ohio Edison Company and The Cleveland Electric Illuminating Company*

{04268280.DOC;1}  5