**BEFORE**
**THE PUBLIC UTILITIES COMMISSION OF OHIO**

| | |
|---|---|
| DIRECT ENERGY BUSINESS, LLC,<br>12 Greenway Plaza, Suite 250<br>Houston, Texas 77046 | )<br>)<br>) |
| Complainant, | )<br>) |
| v. | )<br>) |
| OHIO EDISON COMPANY,<br>76 S. Main Street<br>Akron, Ohio 44308 | )<br>)<br>) |
| and | )<br>) |
| CLEVELAND ELECTRIC ILLUMINATING<br>COMPANY,<br>76 South Main Street<br>Akron, Ohio 44308 | )<br>)<br>)<br>) |
| Respondents. | )<br>)<br>) |

Case No. 17-0791-EL-CSS

**COMPLAINT**

The Respondents made a substantial error that caused wholesale market data to be reported incorrectly to PJM Interconnection LLC. The error caused an unknown entity, whom Respondents refuse to identify, to incur over $5 million in wholesale market charges. Respondents claim to have recently reimbursed the unnamed entity for these charges, and are now turning to Complainant to reimburse Respondents. In short, Respondents are attempting to improperly leverage their supplier tariff to force Direct to resettle a wholesale market transaction. Respondents have no authority to compel resettlement, nor Direct any obligation to agree to resettlement.

**Attachment 2**

Accordingly, in accordance with R.C. 4905.26, R.C. 4928.16 and R.C. 4928.18, Direct alleges as follows:

## PARTIES AND JURISDICTION

1.      Complainant Direct Energy Business, LLC (Direct) is duly certified in accordance with R.C. Chapter 4929 to supply electric generation service to retail customers in Ohio. Direct is the successor-in-interest to Strategic Energy LLC.

2.      Respondent Ohio Edison Company is an "electric light company" under R.C. 4905.03(C), a "public utility" under R.C. 4905.02, and subject to the Commission's general supervisory jurisdiction under R.C. 4905.05 and R.C. 4905.06.

3.      Respondent Cleveland Electric Illuminating Company is an "electric light company" under R.C. 4905.03(C), a "public utility" under R.C. 4905.02, and subject to the Commission's general supervisory jurisdiction under R.C. 4905.05 and R.C. 4905.06.

4.      The Commission has personal jurisdiction over the Respondents and subject matter jurisdiction over this Complaint pursuant to R.C. 4905.26, R.C. 4928.16 and R.C. 4928.18.

## FACTS COMMON TO ALL CLAIMS

5.      Complainant incorporates the allegations contained in paragraphs 1 through 4 above.

6.      Direct, as successor-in-interest to Strategic Energy LLC, and Respondents, are parties to certain Coordination Agreements, effective as of December 5, 2000 (Agreements). The Agreements are attached as Exhibit A. The Agreements require Respondents to provide "Coordination Services" and Direct to pay "Coordination Service Charges," as the Agreements and Respondents' Electric Generation Supplier Tariff (Supplier Tariff) define those terms.

7. The Coordination Services are necessary to coordinate the delivery of competitive retail electric service to customers of Direct located within Respondents' service territories. The Agreements under which Respondents provide Coordination Services are subject to, and incorporate, the terms and conditions of their respective Supplier Tariff.

8. In accordance with Section VI of the Supplier Tariff, Direct is in compliance with Respondents' credit requirements by virtue of both a cash deposit and parental guarantee.

9. On December 18, 2015, Cindy Teamann, Manager, Regulated Settlements for FirstEnergy Service Corp., advised several Direct employees by email that the load for three customers was not accounted for in Direct's load obligation submitted to PJM during various periods between December 1, 2013, and September 30, 2015. Due to the errors occurring beyond PJM's 60-day window, any requested remediation would be through the use of out-of-market bilateral settlements through PJM, according to the email.

10. Ms. Teamann's December 18, 2015, email describes an internal investigation that determined a flag had accidentally been activated on an account that caused no record to be created for the settlement system's daily extract file that contains any supplier changes or other updates. Apparently, because the settlement system received no supplier change record, it continued to report the customers' load obligation to the previous supplier.

11. As a result of Respondents' self-described "errors," revenues from the affected customers identified in the email were credited to Direct, but the cost of energy and capacity was charged to the customers' previous supplier. Ms. Teamann's email does not identify the previous supplier.

12. On December 31, 2015, Ms. Teamann sent another email on behalf of the previous supplier of three customers at issue that incurred the wholesale market costs. Ms.

Teamann requested in her email that Direct provide confirmation that Direct would compensate the prior supplier for the alleged erroneously incurred costs. Without providing any substantiated details regarding the prior supplier's identity or supporting documents regarding the alleged payments, Respondents requested Direct to agree to compensate the unknown entity more than $5 million.

13.    On February 13, 2017, during a telephone call with Edward Stein, Manager, Regulated Settlements for FirstEnergy Corp., Direct explained that it was willing to address the issue of resettlement directly with the affected supplier. Although Direct was willing to discuss the issue, Respondents refused to identify the supplier.

14.    Also during the February 13 call, Edward Stein, on behalf of Respondents and/or the unidentified supplier, threatened that if Direct did not agree to resettlement, Respondents would declare Direct in breach of the Agreements and Supplier Tariff for failure to cooperate.

15.    After the February 13 call, Direct sent an email to Mr. Stein requesting the specific sections of the Supplier Tariff and Agreements that allegedly required Direct to agree to resettlement.

16.    On February 16, 2017, Mr. Stein responded to Direct's request by sending an email that included links to the Supplier Tariff and Agreements, but did not include cites or references to any specific provisions that would support the action threatened by the Respondents.

17.    From the effective date of the Agreements to the present, Direct has paid all Coordination Service Charges billed by Respondents.

18.    From the effective date of the Agreements to the present, Direct has complied with all applicable terms of the Supplier Tariff and Agreements.

19.     Respondents have not served written notice of an Event of Breach as described in Section XXI.A. of the Supplier Tariff.

20.     Respondents have not supplied Direct or the Commission with a notice of default described in Section XXI.D. of the Supplier Tariff.

21.     Respondents have attempted to utilize and invoke the resettlement process in a manner not allowed for in the PJM Open-Access Transmission Tariff (OATT).

22.     Direct has satisfied and continues to satisfy the credit requirements contained in Section VI of the Supplier Tariff.

23.     In their ongoing effort to attempt to force Direct to resettle in a manner not allowed for in the PJM OATT, Respondents have threatened, and continue to threaten, to draw against the financial security provided by Direct.

### COUNT I: VIOLATIONS OF THE SUPPLIER TARIFF

24.     Complainant incorporates the allegations contained in paragraphs 1 through 23 above.

25.     Respondents have violated Section XII.B. of the Supplier Tariff by demanding payment from Direct for amounts that constitute neither a "Charge" nor a "Coordination Services Charge."

26.     Section XII.C. of the Supplier Tariff states, "The Company will assume no responsibility for billing between a Certified Supplier and the Transmission Provider *or any party other than the Company.*" (Emphasis added.) Respondents violated this provision by demanding that Direct compensate an unidentified third-party supplier for alleged financial losses caused by Respondents' coordination errors.

27.     Section XV.A. of the Supplier Tariff states, "The Certified Supplier agrees that settlements will be provided under the rates, terms, and conditions of the Transmission Provider OATT and the applicable business practice manuals." Respondents have violated this provision by demanding that Direct agree to a settlement/resettlement process not compelled by the PJM OATT.

28.     Complainant has been damaged by Respondents' violations.

## COUNT II: VIOLATION OF THE AGREEMENTS

29.     Complainant incorporates the allegations contained in paragraphs 1 through 28 above.

30.     The Agreements expressly incorporate, and are subject to, the Supplier Tariff.

31.     Respondents' violations of the Supplier Tariff also constitute violations of the Agreements.

32.     Complainant has sustained damage as a result of Respondents' violations.

## COUNT III: STATUTORY VIOLATIONS

33.     Complainant incorporates the allegations contained in paragraphs 1 through 32 above.

34.     In demanding payment of unjust and unreasonable charges, Respondents have violated R.C. 4905.22.

35.     In demanding payment of charges not authorized or approved by the Commission, Respondents have violated RC 4905.30 and 4905.32.

36.     Respondents' foregoing actions and demands for payment constitute violations of R.C. 4928.17.

37.     Respondents' foregoing actions and demands for payment constitute rates, fares, charges, tolls, rentals, schedules, classifications, or service rendered, charged, demanded, exacted, or proposed to be rendered, charged, demanded, or exacted, that are unjust, unreasonable, unjustly discriminatory, unjustly preferential, and in violation of law, in violation of R.C. 4905.26.

38.     Complainant has been damaged by Respondents' violations.

### REQUEST FOR RELIEF

Complainant respectfully requests issuance of one of more Commission Orders finding and directing all of the following:

a.   Respondents are immediately enjoined and restrained from exercising any remedy under the Supplier Tariff, Agreements, or other provisions of law during the pendency of this Complaint;

b.   Respondents have no authority to force Direct to resettle with respect to any amounts allegedly paid by Respondents to the prior unidentified supplier;

c.   Reasonable grounds for complaint have been stated;

d.   Respondents committed the violations complained of herein;

e.   Such violations constitute unjust, unreasonable and inadequate service;

f.   Complainant is entitled to damages, restitution, and attorneys' fees in an amount to be determined by a court of competent jurisdiction, subject to trebling under R.C. 4905.61; and

g.   Such other and further relief as the law, equity and justice require.

Dated: March 20, 2017

Respectfully submitted,

_/s/ Mark A. Whitt_
Mark A. Whitt
Andrew J. Campbell
Rebekah Glover
WHITT STURTEVANT LLP
88 E. Broad St., Suite 1590
Columbus, Ohio 43215
Telephone: (614) 224-3946
Facsimile:  (614) 224-3960
whitt@whitt-sturtevant.com
campbell@whitt-sturtevant.com
glover@whitt-sturtevant.com

(All counsel are willing to accept
service by email)

ATTORNEYS FOR DIRECT
ENERGY BUSINESS, LLC

**INSTRUCTIONS FOR SERVICE**

TO THE DOCKETING DIVISION:

Please serve the Complaint to the following:

Ohio Edison Company and Cleveland Electric Illuminating Co.
c/o C T Corporation System
1300 East 9th Street
Cleveland, OH 44114


/s/ Mark A. Whitt
One of the Attorneys for Direct Energy
Business, LLC

## COORDINATION AGREEMENT

1.0  This Coordination Agreement ("Agreement"), dated as of **December 5, 2000** is entered into, by and between OHIO EDISON COMPANY  (the "Company") and **Strategic Energy, L.L.C.** (Certified Electric Generation Supplier or "Certified Supplier").

2.0.  The Company agrees to supply, and the Certified Supplier agrees to have the Company supply, all "Coordination Services" specified in the Supplier Tariff ("Tariff").  Both Parties agree that such services are necessary to coordinate the delivery of Competitive Retail Electric Services to Customers located within the Company's service territory.

3.0  Representations and Warranties.

   (a)      The Certified Supplier hereby represents, warrants and covenants as follows:

       (i)   The Certified Supplier is in compliance, and will continue to comply, with all obligations, rules and regulations, as established and interpreted by the FirstEnergy System Control Center ("FE-SCC"), that are applicable to the Certified Supplier's serving Customers located in the FirstEnergy Control Area; and

       (ii)   The Certified Supplier is certified by the Commission to provide Competitive Retail Electric Service to Customers in Ohio and has and will continue to satisfy all other Commission requirements applicable to Certified Suppliers.

   (b)   The Company and the Certified Supplier, individually referred to hereafter as the "Party," each represents, warrants and covenants as follows:

       (i)   Each Party's performance of its obligations hereunder has been duly authorized by all necessary action on the part of the Party and does not and will not conflict with or result in a breach of the Party's charter documents or bylaws or any indenture, mortgage, other agreement or instrument, or any statute or rule, regulation, order, judgment, or decree of any judicial or administrative body to which the Party is a party or by which the Party or any of its properties is bound or subject.

Filed pursuant to Order dated July 19, 2000 in Case No. 00-813-EL-EDI and Case No. 99-1212-EL-ETP before
The Public Utilities Commission of Ohio

Issued by H. Peter Burg, President

Effective: January 1, 2001

Ohio Edison Company
Akron, Ohio

P.U.C.O.  No. S-1

Original Sheet No. 1
Page 49 of 54

(ii)   This Agreement is a valid and binding obligation of the Party, enforceable in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency or similar laws from time to time in effect that affect creditors' rights generally or by general principles of equity.

4.0   The Certified Supplier shall provide notice to the Company via facsimile, with a copy delivered pursuant to overnight mail, at such time that the Certified Supplier learns that any of the representations, warranties, or covenants in Section 3.0 of this Agreement have been violated.

5.0   As consideration for Coordination Services provided by the Company, the Certified Supplier shall pay the Company those Coordination Services Charges billed to the Certified Supplier in accordance with the terms and conditions of the Supplier Tariff.

6.0   Coordination Services between the Company and the Certified Supplier will commence on **January 1, 2000**.

7.0   Any notice or request made to or by either Party regarding this Agreement shall be   made to the representative of the other Party as indicated below.

To Ohio Edison Company:

Competitive Energy Supplier Contracts Administrator
Ohio Edison Company
76 South Main Street
Akron, Ohio 44308

Filed pursuant to Order dated July 19, 2000 in Case No. 00-813-EL-EDI and Case No. 99-1212-EL-ETP before
The Public Utilities Commission of Ohio

Issued by H. Peter Burg, President                                    Effective: January 1, 2001

Exhibit A

Ohio Edison Company                                                    Original Sheet No. 1
Akron, Ohio                         P.U.C.O.  No. S-1                  Page 50 of 54

To the Certified Supplier:

Strategic Energy, L.L.C.

Attn:  Diane M. Smith

Two Gateway Center, 9th Floor

Pittsburgh, PA  15222

Telephone:     412-394-6522

Facsimile:     412-394-6576

8.0     If at any time during the term of the Tariff or this Agreement, FERC, the Commission or a court of
        competent jurisdiction issues an order under which a party hereto believes that its rights and/or interests
        under the Coordination Agreement are materially affected, the party so affected shall within thirty (30)
        days of said final order provide the other party with notice setting forth in reasonable detail how said
        order has materially affected its rights and/or interests in the Coordination Agreement.  Within thirty (30)
        days from the receiving party's receipt of said notice the parties agree to attempt through good faith
        negotiations to resolve the issue.  If the parties are unable to resolve the issue within thirty (30) days
        from the commencement of negotiations, either party may at the close of said thirty (30) day period
        terminate the Agreement, subject to any applicable regulatory requirements, following an additional
        thirty (30) days prior written notice to the other party without any liability or responsibility whatsoever,
        except for obligations arising prior to the date of service termination.

9.0     The Supplier Tariff is incorporated herein by reference and made a part hereof.  All terms used in this
        Agreement that are not otherwise defined shall have the meaning provided in the Supplier Tariff.

Exhibit A

Ohio Edison Company                                          Original Sheet No. 1
Akron, Ohio                    P.U.C.O.  No. S-1                Page 51 of 54

IN WITNESS WHEREOF, and intending to be legally bound thereby, OHIO EDISON COMPANY and the

Certified Supplier identified above have caused this Coordination Agreement to be executed by their

respective authorized officials.

**OHIO EDISON COMPANY**

By: *E T Carey*

Signature

*E. T. CAREY*

Print or Type Name

*VICE PRESIDENT*          *12-22-00*

Title                        Date

**STRATEGIC ENERGY, L.L.C.**
**CERTIFIED SUPPLIER COMPANY NAME**

By: *Patrick J Purdy*

Signature

**Patrick J. Purdy**

Print or Type Name

**Chief Operating Officer**          **December 5, 2000**

Title                        Date

---

Filed pursuant to Order dated July 19, 2000 in Case No. 00-813-EL-EDI and Case No. 99-1212-EL-ETP before
The Public Utilities Commission of Ohio

Issued by H. Peter Burg, President                    Effective: January 1, 2001

**Exhibit A**

Ohio Edison Company                                                Original Sheet No. 1
Akron, Ohio                          P.U.C.O.  No. S-1                 Page 52 of 54

### Scheduling Coordinator Designation Form

1.0   This Scheduling Coordinator Designation Form, dated _____, is being  submitted to FirstEnergy
("FE") by the following Certified Supplier:

_____ .

2.0   By submitting this form, the Certified Supplier hereby notifies FE that it has appointed the following
entity to act as its Scheduling Coordinator, effective the first day of <u>January 2000</u>, in accordance with
Section 7 of the Supplier Tariff:

<u>Strategic Energy, L.L.C.</u>
Scheduling Coordinator Name

3.0   The Certified Supplier further notifies the Company that it is designating the Certified Supplier identified
in the preceding paragraph as its Scheduling Coordinator for the following specific purpose(s) (please
check and/or fill in):

|     |     |
|-----|-----|
| X | Load Forecasting |
| X | Assessing Import Capability |
| X | Scheduling Energy Delivery |
| X | Assumption of Reconciliation Rights and Responsibilities |

4.0   FE may use the Scheduling Coordinator as the sole point of contact with the Certified Supplier in
connection with FE's provision of Coordination Services to the Certified Supplier.  Likewise, the
Scheduling Coordinator appointed by the Certified Supplier shall be responsible for the performance of
all Coordination Obligations of the Certified Supplier that are specifically delegated to said Scheduling
Coordinator in this Form.

5.0   If the Certified Supplier delegates assumption of reconciliation rights and responsibilities to the
Scheduling Coordinator, the Certified Supplier agrees that FE may bill the Scheduling Coordinator
directly for all Coordination Service Charges attributable to the Certified Supplier, and that the
Scheduling Coordinator will pay the Company such charges on behalf of the Certified Supplier in
accordance with the terms and conditions of the Supplier Tariff.

6.0   The Certified Supplier and its appointed Scheduling Coordinator shall comply with all terms and
conditions of the Supplier Tariff, including those pertaining to Scheduling Coordinators and to payment
and billing.

7.0   All inquiries, communications, or notices by the Company relating to Certified Supplier's use of the
Scheduling Coordinator designated above may be directed to the following representatives of the
Certified Supplier or Scheduling Coordinator:

To the Certified Supplier:

<u>Strategic Energy, L.L.C.</u>

<u>Two Gateway Center, 9th floor</u>

<u>Pittsburgh, PA  15222</u>

| | |
|---|---|
| Attention: | <u>Power Coordinators</u> |
| Title: | |
| Telephone: | <u>412-394-6500</u> |
| Fax: | <u>412-394-9731</u> |
| Internet e-mail: | <u>powercoordinators@sel.com</u> |

Filed pursuant to Order dated July 19, 2000 in Case No. 00-813-EL-EDI and Case No. 99-1212-EL-ETP before
The Public Utilities Commission of Ohio

Issued by H. Peter Burg, President                                Effective: January 1, 2001

Exhibit A

Ohio Edison Company                                                    Original Sheet No. 1
Akron, Ohio                          P.U.C.O.  No. S-1                      Page 53 of 54

To the Scheduling Coordinator:

Strategic Energy, L.L.C.

Two Gateway Center, 9th Floor

Pittsburgh, PA  15222

Attention:        **Power Coordinators**

Title:            _____

Telephone:        412-394-6500

Fax:              412-394-9731

Internet e-mail:  powercoordinators@sel.com

8.0   The Supplier Tariff is incorporated herein by reference and made a part hereof.  All capitalized terms
      used, but not defined, in this designation form shall have the meaning stated in the Supplier Tariff.

9.0   The Certified Supplier has executed this designation form below by its duly authorized representative as
      follows:

Signature:        _____

Name:             **Patrick J. Purdy**

Title:            **Chief Operating Officer**

Date:             **December 5, 2000**

10.0  The Certified Supplier has obtained the following Acknowledgment and Consent to this designation,
      which is executed below by the duly authorized representative of the Scheduling Coordinator:

Filed pursuant to Order dated July 19, 2000 in Case No. 00-813-EL-EDI and Case No. 99-1212-EL-ETP before
The Public Utilities Commission of Ohio

Issued by H. Peter Burg, President                              Effective: January 1, 2001

Exhibit A

Ohio Edison Company                                              Original Sheet No. 1
Akron, Ohio                         P.U.C.O. No. S-1                Page 54 of 54

## Acknowledgment and Consent

Intending to be legally bound thereby, the duly authorized representative of above designated
Scheduling Coordinator has executed this document below to acknowledge and consent to its
appointment as a Scheduling Coordinator, and to further state its agreement to abide by the terms
and conditions of its designation set forth above in the Scheduling Coordinator Designation Form
prepared by the Certified Supplier, including the terms and conditions of the Supplier Tariff,
which is incorporated therein by reference.

Signature:          _____

Name:               **Patrick J. Purdy**

Title:              **Chief Operating Officer**

Date:               **December 5, 2000**

Filed pursuant to Order dated July 19, 2000 in Case No. 00-813-EL-EDI and Case No. 99-1212-EL-ETP before
The Public Utilities Commission of Ohio

Issued by H. Peter Burg, President                            Effective: January 1, 2001

Exhibit A

## COORDINATION AGREEMENT

1.0    This Coordination Agreement ("Agreement"), dated as of **December 5, 2000** is entered into, by and between CLEVELAND ELECTRIC ILLUMINATING COMPANY  (the "Company") and **Strategic Energy, L.L.C.**  (Certified Electric Generation Supplier or "Certified Supplier").

2.0.    The Company agrees to supply, and the Certified Supplier agrees to have the Company supply, all "Coordination Services" specified in the Supplier Tariff ("Tariff").  Both Parties agree that such services are necessary to coordinate the delivery of Competitive Retail Electric Services to Customers located within the Company's service territory.

3.0    Representations and Warranties.

     (a)      The Certified Supplier hereby represents, warrants and covenants as follows:

         (i)      The Certified Supplier is in compliance, and will continue to comply, with all obligations, rules and regulations, as established and interpreted by the FirstEnergy System Control Center ("FE-SCC"), that are applicable to the Certified Supplier's serving Customers located in the FirstEnergy Control Area; and

         (ii)      The Certified Supplier is certified by the Commission to provide Competitive Retail Electric Service to Customers in Ohio and has and will continue to satisfy all other Commission requirements applicable to Certified Suppliers.

     (b)      The Company and the Certified Supplier, individually referred to hereafter as the "Party," each represents, warrants and covenants as follows:

         (i)      Each Party's performance of its obligations hereunder has been duly authorized by all necessary action on the part of the Party and does not and will not conflict with or result in a breach of the Party's charter documents or bylaws or any indenture, mortgage, other agreement or instrument, or any statute or rule, regulation, order, judgment, or decree of any judicial or administrative body to which the Party is a party or by which the Party or any of its properties is bound or subject.

Filed pursuant to Order dated July 19, 2000 in Case No. 00-813-EL-EDI and Case No. 99-1212-EL-ETP before
The Public Utilities Commission of Ohio

Issued by H. Peter Burg, President         Effective: January 1, 2001

Cleveland Electric Illuminating Company                    Original Sheet No. 1
Cleveland, Ohio             P.U.C.O. No. S-1                     Page 49 of 54

        (ii)      This Agreement is a valid and binding obligation of the Party, enforceable in accordance with

its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency

or similar laws from time to time in effect that affect creditors' rights generally or by general

principles of equity.

4.0      The Certified Supplier shall provide notice to the Company via facsimile, with a copy delivered pursuant

to overnight mail, at such time that the Certified Supplier learns that any of the representations,

warranties, or covenants in Section 3.0 of this Agreement have been violated.

5.0      As consideration for Coordination Services provided by the Company, the Certified Supplier shall pay

the Company those Coordination Services Charges billed to the Certified Supplier in accordance with the

terms and conditions of the Supplier Tariff.

6.0      Coordination Services between the Company and the Certified Supplier will commence on

**January 1, 2000**

7.0      Any notice or request made to or by either Party regarding this Agreement shall be   made to the

representative of the other Party as indicated below.

To Cleveland Electric Illuminating Company:

         Competitive Energy Supplier Contracts Administrator
         Cleveland Electric Illuminating Company
         76 South Main Street
         Akron, Ohio 44308

Filed pursuant to Order dated July 19, 2000 in Case No. 00-813-EL-EDI and Case No. 99-1212-EL-ETP before
The Public Utilities Commission of Ohio

Issued by H. Peter Burg, President                         Effective: January 1, 2001

Exhibit A

Cleveland Electric Illuminating Company                                    Original Sheet No. 1
Cleveland, Ohio                          P.U.C.O.  No. S-1                          Page 50 of 54

To the Certified Supplier:

    Strategic Energy, L.L.C.

    Attn:  Diane M. Smith

    Two Gateway Center, 9th Floor

    Pittsburgh, PA  15222

    Telephone:    412-394-6522

    Facsimile:    412-394-6576

8.0    If at any time during the term of the Tariff or this Agreement, FERC, the Commission or a court of competent jurisdiction issues an order under which a party hereto believes that its rights and/or interests under the Coordination Agreement are materially affected, the party so affected shall within thirty (30) days of said final order provide the other party with notice setting forth in reasonable detail how said order has materially affected its rights and/or interests in the Coordination Agreement.  Within thirty (30) days from the receiving party's receipt of said notice the parties agree to attempt through good faith negotiations to resolve the issue.  If the parties are unable to resolve the issue within thirty (30) days from the commencement of negotiations, either party may at the close of said thirty (30) day period terminate the Agreement, subject to any applicable regulatory requirements, following an additional thirty (30) days prior written notice to the other party without any liability or responsibility whatsoever, except for obligations arising prior to the date of service termination.

9.0    The Supplier Tariff is incorporated herein by reference and made a part hereof.  All terms used in this Agreement that are not otherwise defined shall have the meaning provided in the Supplier Tariff.

Filed pursuant to Order dated July 19, 2000 in Case No. 00-813-EL-EDI and Case No. 99-1212-EL-ETP before
The Public Utilities Commission of Ohio

Issued by H. Peter Burg, President                                    Effective: January 1, 2001

Exhibit A

Cleveland Electric Illuminating Company                    Original Sheet No. 1
Cleveland, Ohio                    P.U.C.O.  No. S-1              Page 51 of 54

IN WITNESS WHEREOF, and intending to be legally bound thereby, CLEVELAND ELECTRIC

ILLUMINATING COMPANY and the Certified Supplier identified above have caused this Coordination

Agreement to be executed by their respective authorized officials.

CLEVELAND ELECTRIC ILLUMINATING COMPANY

By: _____
    Signature

    _E.T. CAREY_____

    Print or Type Name

    _VICE PRESIDENT_____        _12-22-00_

    Title                          Date


STRATEGIC ENERGY, L.L.C.
CERTIFIED SUPPLIER COMPANY NAME

By: _____
    Signature

    Patrick J. Purdy_____

    Print or Type Name

    Chief Operating Officer_____        December 5, 2000_____

    Title                                      Date


Filed pursuant to Order dated July 19, 2000 in Case No. 00-813-EL-EDI and Case No. 99-1212-EL-ETP before
The Public Utilities Commission of Ohio

Issued by H. Peter Burg, President                          Effective: January 1, 2001

Exhibit A

Cleveland Electric Illuminating Company                              Original Sheet No. 1
Cleveland, Ohio                    P.U.C.O. No. S-1                    Page 52 of 54

### Scheduling Coordinator Designation Form

1.0   This Scheduling Coordinator Designation Form, dated December 5, 2000, is being submitted to FirstEnergy ("FE") by the following Certified Supplier: Strategic Energy, L.L.C.                    .

2.0   By submitting this form, the Certified Supplier hereby notifies FE that it has appointed the following entity to act as its Scheduling Coordinator, effective the first day of January 2000, in accordance with Section 7 of the Supplier Tariff:

Strategic Energy, L.L.C.
Scheduling Coordinator Name

3.0   The Certified Supplier further notifies the Company that it is designating the Certified Supplier identified in the preceding paragraph as its Scheduling Coordinator for the following specific purpose(s) (please check and/or fill in):

| | |
|---|---|
| X | Load Forecasting |
| X | Assessing Import Capability |
| X | Scheduling Energy Delivery |
| X | Assumption of Reconciliation Rights and Responsibilities |

4.0   FE may use the Scheduling Coordinator as the sole point of contact with the Certified Supplier in connection with FE's provision of Coordination Services to the Certified Supplier. Likewise, the Scheduling Coordinator appointed by the Certified Supplier shall be responsible for the performance of all Coordination Obligations of the Certified Supplier that are specifically delegated to said Scheduling Coordinator in this Form.

5.0   If the Certified Supplier delegates assumption of reconciliation rights and responsibilities to the Scheduling Coordinator, the Certified Supplier agrees that FE may bill the Scheduling Coordinator directly for all Coordination Service Charges attributable to the Certified Supplier, and that the Scheduling Coordinator will pay the Company such charges on behalf of the Certified Supplier in accordance with the terms and conditions of the Supplier Tariff.

6.0   The Certified Supplier and its appointed Scheduling Coordinator shall comply with all terms and conditions of the Supplier Tariff, including those pertaining to Scheduling Coordinators and to payment and billing.

7.0   All inquiries, communications, or notices by the Company relating to Certified Supplier's use of the Scheduling Coordinator designated above may be directed to the following representatives of the Certified Supplier or Scheduling Coordinator:

To the Certified Supplier:

Strategic Energy, L.L.C.

Two Gateway Center, 9th Floor

Pittsburgh, PA  15222

| | |
|---|---|
| Attention: | Power Coordinators |
| Title: | |
| Telephone: | 412-394-6500 |
| Fax: | 412-394-9731 |
| Internet e-mail: | powercoordinators@sel.com |

Filed pursuant to Order dated July 19, 2000 in Case No. 00-813-EL-EDI and Case No. 99-1212-EL-ETP before
The Public Utilities Commission of Ohio

Issued by H. Peter Burg, President                          Effective: January 1, 2001

Exhibit A

Cleveland Electric Illuminating Company            Original Sheet No. 1
Cleveland, Ohio          P.U.C.O. No. S-1          Page 53 of 54

To the Scheduling Coordinator:

**Strategic Energy, L.L.C.**

**Two Gateway Center, 9th Floor**

**Pittsburgh, PA 15222**

| | |
|---|---|
| Attention: | **Power Coordinators** |
| Title: | |
| Telephone: | **412-394-6500** |
| Fax: | **412-394-9731** |
| Internet e-mail: | powercoordinators@sei.com |

8.0    The Supplier Tariff is incorporated herein by reference and made a part hereof. All capitalized terms used, but not defined, in this designation form shall have the meaning stated in the Supplier Tariff.

9.0    The Certified Supplier has executed this designation form below by its duly authorized representative as follows:

| | |
|---|---|
| Signature: | *(signature)* |
| Name: | **Patrick J. Purdy** |
| Title: | **Chief Operating Officer** |
| Date: | **December 5, 2000** |

10.0   The Certified Supplier has obtained the following Acknowledgment and Consent to this designation, which is executed below by the duly authorized representative of the Scheduling Coordinator:

---

Filed pursuant to Order dated July 19, 2000 in Case No. 00-813-EL-EDI and Case No. 99-1212-EL-ETP before
The Public Utilities Commission of Ohio

Issued by H. Peter Burg, President                  Effective: January 1, 2001

Exhibit A

| Cleveland Electric Illuminating Company | | Original Sheet No. 1 |
| Cleveland, Ohio | P.U.C.O.  No. S-1 | Page 54 of 54 |

### Acknowledgment and Consent

Intending to be legally bound thereby, the duly authorized representative of above designated Scheduling Coordinator has executed this document below to acknowledge and consent to its appointment as a Scheduling Coordinator, and to further state its agreement to abide by the terms and conditions of its designation set forth above in the Scheduling Coordinator Designation Form prepared by the Certified Supplier, including the terms and conditions of the Supplier Tariff, which is incorporated therein by reference.

Signature: _____

Name:        **Patrick J. Purdy**

Title:         **Chief Operating Officer**

Date:         **December 5, 2000**

Filed pursuant to Order dated July 19, 2000 in Case No. 00-813-EL-EDI and Case No. 99-1212-EL-ETP before
The Public Utilities Commission of Ohio

Issued by H. Peter Burg, President                                    Effective: January 1, 2001