BEFORE THE
PUBLIC UTILITIES COMMISSION OF OHIO

| | |
|---|---|
| Direct Energy Business, LLC, | ) |
| | ) |
| Complainant, | ) |
| | ) Case No. 17-791-EL-CSS |
| v. | ) |
| | ) |
| Ohio Edison Company and The Cleveland | ) |
| Electric Illuminating Company, | ) |
| | ) |
| Respondents. | ) |
| | ) |

**ANSWER OF OHIO EDISON COMPANY AND THE CLEVELAND ELECTRIC ILLUMINATING COMPANY**

Respondents, Ohio Edison Company and The Cleveland Electric Illuminating Company (collectively, the "Companies"), for their Answer to the Complaint filed in the instant action respond as follows:

The Companies admit providing incorrect data to PJM Interconnection LLC ("PJM") on behalf of Direct Energy Business, LLC ("Complainant") that allowed Complainant to receive a $5.6 million windfall related to the coordination of Complainant's load obligation. The Companies also admit they have asked Complainant to cooperate under the Electric Generation Supplier Tariff ("Supplier Tariff") so that Complainant may pay what it should have paid, but Complainant has refused to do so. The Companies deny any remaining allegations in the Preamble of the Complaint.

**PARTIES AND JURISDICTION**

1. The Companies admit that Complainant is the successor-in-interest to Strategic Energy LLC. The Companies deny the remaining allegations in paragraph 1 of the Complaint.

2. The Companies admit the allegations in paragraph 2 of the Complaint.

3. The Companies admit the allegations in paragraph 3 of the Complaint.

4. The Companies admit the Commission has personal jurisdiction over the Companies and subject matter jurisdiction over the Supplier Tariff and the Coordination Agreements. The Companies deny the remaining allegations in paragraph 4 of the Complaint.

## FACTS COMMON TO ALL CLAIMS

5. As to paragraph 5 of the Complaint, the Companies hereby incorporate the preceding paragraphs as if fully restated herein.

6. The Companies admit the allegations in paragraph 6 of the Complaint.

7. The Companies admit the allegations in paragraph 7 of the Complaint.

8. The Companies admit the allegations in paragraph 8 of the Complaint.

9. The Companies admit that on or around December 18, 2015, Cindy Teamann, Manager, Regulated Settlements for FirstEnergy Service Company, notified Complainant via email of the Companies' error. The Companies admit the remaining allegations contained within paragraph 9 of the Complaint.

10. The Companies admit the allegations in paragraph 10 of the Complaint.

11. The Companies admit that as a result of the error, Complainant was not charged $5.6 million for the load of affected customers despite being credited with millions in revenues from those customers. The Companies further admit that the cost of energy and capacity that should have been charged to Complainant was not; instead, those costs were charged to the affected customers' previous supplier. Further answering, the Companies admit that Ms. Teamann's email maintained the confidentiality of the identity of the previous supplier. The Companies deny the remaining allegations in paragraph 11 of the Complaint.

12.     The Companies admit that Ms. Teamann requested via a December 31, 2015 email that Complainant agree to refund $5.3 million related to one of Complainant's retail customers for which the Companies had provided Complainant with detailed data showing energy and capacity adjustments on an hourly basis.  The Companies deny the remaining allegations in paragraph 12 of the Complaint.

13.     The Companies admit that Complainant told Edward Stein, Manager, Regulated Settlements for FirstEnergy Service Company, over the telephone that Complainant wanted to communicate directly with the prior supplier.  Further answering, the Companies admit they maintained the confidentiality of the prior supplier.  Moreover, the Companies state that disclosing the name of the prior supplier was unnecessary to resolve Complainant's $5.6 million resettlement with PJM. The Companies deny the remaining allegations in paragraph 13 of the Complaint.

14.     The Companies state that Mr. Stein discussed remedies under the Supplier Tariff with Complainant, and otherwise deny the allegations in paragraph 14 of the Complaint.

15.     The Companies admit that Complainant asked via e-mail for the specific sections of the Supplier Tariff and Supplier Agreement Mr. Stein referenced during the February 13 call.  The Companies deny the remaining allegations in paragraph 15 of the Complaint.

16.     The Companies admit that, on February 16, 2017, Mr. Stein provided Complainant with hyperlinks via email to the Supplier Tariff and Agreements.  Further answering, Mr. Stein explained to Complainant via e-mail that "Direct has enjoyed the benefits of over $5.6 million retail revenue (based on the wholesale expense determination) with no actual expense associated/coordinated with delivery of wholesale market products/services – an

outcome to which it was never entitled in the first place under state tariffs and agreements." The Companies deny the remaining allegations in paragraph 16 of the Complaint.

17. The Companies admit the allegations in paragraph 17 of the Complaint.

18. The Companies deny the allegations in paragraph 18 of the Complaint because Complainant has failed to cooperate by refusing to provide accurate data to PJM as a way to avoid returning the $5.6 million it owes.

19. The Companies admit the allegations in paragraph 19 of the Complaint. The Companies have not served written notice of an Event of Breach on Complainant because the Companies anticipated that Complainant, like many other suppliers affected by this issue, would cooperate in reaching a reasonable resolution instead of choosing to litigate to maintain its $5.6 million windfall.

20. The Companies admit the allegations in paragraph 20 of the Complaint.

21. The Companies state that paragraph 21 of the Complaint contains legal conclusions to which no response is required and otherwise deny the allegations contained within paragraph 21 of the Complaint.

22. The Companies admit the allegations in paragraph 22 of the Complaint.

23. The Companies have advised Complainant that drawing on Complainant's letter of credit is an option if Complainant does not settle its $5.6 million windfall. The Companies deny the remaining allegations in paragraph 23 of the Complaint.

**COUNT I: VIOLATIONS OF THE SUPPLIER TARIFF**

24. As to paragraph 24 of the Complaint, the Companies hereby incorporate the preceding paragraphs as if fully restated herein.

25. The Companies deny the allegations in paragraph 25 of the Complaint.

26. The Companies state that Section XII.C. of the Supplier Tariff speaks for itself. The Companies deny the remaining allegations in paragraph 26 of the Complaint and further state that Complainant's obligation is to cooperate in the provision of coordination services so that Complainant resettles with PJM for its actual retail load obligation.

27. The Companies state that Section XV.A. of the Supplier Tariff speaks for itself. The Companies deny the remaining allegations in paragraph 27 of the Complaint.

28. The Companies deny the allegations in paragraph 28 of the Complaint that Complainant has been damaged at all; to the contrary, Complainant has unjustly enriched itself by refusing to resettle with PJM the $5.6 million it owes.

## COUNT II: VIOLATION OF THE AGREEMENTS

29. As to paragraph 29 of the Complaint, the Companies hereby incorporate the preceding paragraphs as if fully restated herein.

30. The Companies admit the allegations in paragraph 30 of the Complaint.

31. The Companies deny the allegations in paragraph 31 of the Complaint.

32. The Companies deny the allegations in paragraph 32 of the Complaint.

## COUNT III: STATUTORY VIOLATIONS

33. As to paragraph 33 of the Complaint, the Companies hereby incorporate the preceding paragraphs as if fully restated herein.

34. The Companies deny the allegations in paragraph 34 of the Complaint.

35. The Companies deny the allegations in paragraph 35 of the Complaint.

36. The Companies deny the allegations in paragraph 36 of the Complaint.

37. The Companies deny the allegations in paragraph 37 of the Complaint.

38. The Companies deny the allegations in paragraph 38 of the Complaint.

39. The Request for Relief should not contain factual allegations that form the basis of the Complaint.  As such, no response is required.  However, to the extent Complainant's Request for Relief may be interpreted as doing so, the Companies re-allege and incorporate by reference, as if fully rewritten herein, their responses to paragraphs 1 through 38.

## AFFIRMATIVE DEFENSES

1. Complainant has failed to set forth reasonable grounds for complaint upon which relief may be granted.  The Companies provided incorrect data to PJM on behalf of Complainant that allowed Complainant to avoid paying approximately $5.6 million that Complainant should have paid for its customers' load.  As soon as the Companies identified the data reporting issue, the Companies promptly addressed and rectified it.  Although there is no dispute that Complainant would have paid $5.6 million for its load obligations if the correct data had been provided, Complainant continues to obstruct the Companies' efforts to correct the settlement with PJM.  As a result, Complainant has breached its duty to cooperate under Section III.C. of the Supplier Tariff, which requires suppliers like Complainant to pay for their customers' load.  The Companies' mistake affected some eleven suppliers, and most of the suppliers who received a windfall cooperated with the Companies to make the proper settlements with PJM.  Complainant has incurred no damages but, to the contrary, has been unjustly enriched in the amount of $5,602,981.39. Because Complainant has failed to cooperate as required by the Companies' Supplier Tariffs and Supplier Agreements, the Commission should find that Complainant has not stated reasonable grounds for complaint.

2. The Companies have breached no legal duty or contractual obligation owed to Complainant.

3. The Complaint is barred by the doctrine of equitable estoppel.

4. The Complaint is barred by the doctrine of unclean hands.

5. The Companies have acted at all times in accordance with the terms of the Agreements and Supplier Tariff, as well as all rules, regulations and Orders as promulgated and issued by the PUCO, the laws existing in the State of Ohio, and accepted standards and practices in the electric industry.

6. Complainant should agree to resettlement of $5.6 million with PJM, or it should be ordered to cooperate in resettlement given that Complainant has pre-filed the testimony of Theresa L. Ringenbach in PUCO Case No. 14-1277-EL-CSS (dated April 14, 2015) stating that any CRES provider in Complainant's position vis-à-vis PJM should consent to resettlement or be ordered by the Commission to consent to resettlement under the supplier tariff. In PUCO Case No. 14-1277-EL-CSS, Complainant was in the position of the Harmed Supplier – it had been overbilled by PJM because the electric distribution utility had provided incorrect data to PJM. Not all of the suppliers that received credits agreed to resettlement to make Complainant whole. Thus, Ms. Ringenbach submitted testimony on behalf of Complainant explaining how Complainant wanted the Commission to solve the problem, including the following:

- When a problem or error arises as it relates to what PJM billed or collected from the LSEs, a process called resettlement is available to correct those problems or errors. Ringenbach Test. p. 7.

- Outside of a 60-day window following the month of delivery, the Resettlement C process is available for resettlements by the utility. *Id.*

- The Commission should mandate that each supplier (CRES provider or their designated Transmission Scheduling Agent or "TSA") affected by the

resettlement that is regulated by the Commission affirmatively consent in writing to the resettlement or risk consequences in its licensing docket before the Commission. *Id.*, pp. 8-9.

As there is no dispute that Complainant is regulated by the Commission as a CRES provider, the Commission should fulfill Ms. Ringenbach's request and order Complainant to take all steps necessary under the Supplier Tariff to resettle the $5.6 million it owes.

7. The Companies reserve the right to raise additional affirmative defenses or to withdraw any of the foregoing affirmative defenses as may become necessary during the investigation and discovery of this matter.

WHEREFORE, having fully answered the Complaint, the Companies respectfully request that the instant action be dismissed, and that they be granted any other relief that this Commission may deem just and reasonable.

Respectfully Submitted,

*/s/ James F. Lang*
James F. Lang (0059668)
Mark T. Keaney (0095318)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114
(216) 622-8200
(216) 241-0816 (fax)
jlang@calfee.com
mkeaney@calfee.com

*Attorneys for Respondents Ohio Edison Company and The Cleveland Electric Illuminating Company*

## CERTIFICATE OF SERVICE

I certify that the foregoing Answer was filed electronically through the Docketing Information System of the Public Utilities Commission of Ohio on this 10th day of April, 2017. The PUCO's e-filing system will electronically serve notice of the filing of this document on counsel for all parties.

/s/ *Mark T. Keaney*
One of the Attorneys for Ohio Edison Company and The Cleveland Electric Illuminating Company