IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Ohio Edison Company, *et al*. ) | |
| ) | |
| Plaintiffs, ) | CASE NO.: 17-cv-00746 |
| ) | |
| vs. ) | JUDGE SOLOMON OLIVER, JR. |
| ) | |
| Direct Energy Business, LLC, ) | |
| ) | **PLAINTIFFS' MEMORANDUM IN** |
| ) | **OPPOSITION TO DIRECT'S MOTION** |
| Defendant. ) | **TO DISMISS UNDER RULE 12(B)(6)** |
| ) | |
| ) | |

**I.     INTRODUCTION**

Due to a computer error made by Plaintiffs Ohio Edison Company and The Cleveland Electric Illuminating Company (the "Companies"), Direct Energy Business, LLC ("Direct") received a $5.6 million windfall. (Complaint, ¶¶ 13-17). Direct participates in an energy market in which multiple suppliers buy and sell energy through PJM Interconnection LLC ("PJM"), which serves as a clearinghouse for these transactions. (Complaint, ¶ 9). When a retail customer switches service from one supplier to another, the costs to supply that customer also should transfer to the new supplier. However, when three customers switched from their old supplier to Direct, the costs to supply those customers stayed with and were paid by the old supplier. Direct was paid by those customers for the energy they consumed. However, Direct did not incur any costs tied to the delivery of that energy to the customers. Correspondingly, the old supplier –

referred to in the Complaint as the Harmed Supplier for obvious reasons – incurred all the costs of the energy the customers consumed but was paid nothing in exchange. (Complaint, ¶¶ 12-14). By paying for Direct's energy, the Harmed Supplier enriched Direct in the amount of $5,602,981.39.

Direct's receipt of a windfall is uncontested – its retail customers paid it millions of dollars for energy for which Direct paid nothing in the wholesale market. It has $5.6 million in the bank that it should have paid for energy. But the Harmed Supplier paid for Direct's energy instead, and Direct has refused to surrender its windfall. (Complaint ¶¶ 14-15, 17). As a result, the Harmed Supplier has an unjust enrichment claim against Direct. The Harmed Supplier assigned that unjust enrichment claim to the Companies (Complaint ¶ 16) and, thus, the Companies bring this unjust enrichment claim in the shoes of the Harmed Supplier.[1]

No one should benefit at another's expense contrary to equity and good conscience. This is the fundamental precept behind the sole claim at issue in this case. The Court should deny Direct's Motion to Dismiss because 1) it is rife with improper, disputed factual allegations that are either entirely unsupported or are allegedly supported by citations to matters outside the pleadings, and 2) the Complaint states sufficient factual allegations to support an unjust enrichment claim under Ohio law.

## II. DIRECT'S FILING IS NOT A PROPER MOTION TO DISMISS BECAUSE IT ARGUES DISPUTED FACTS, NOT LAW

It is improper and inappropriate for Direct to argue disputed facts/evidence and to raise alleged defenses in a Rule 12(b)(6) motion to dismiss. *See*, *e.g.*, *Official Comm. of Admin. v.*

---

[1] Upon execution of the assignment agreement, the Companies stepped into the shoes of the Harmed Supplier, succeeding to all the rights and remedies of the Harmed Supplier. *See Chrysler Fin. Co., L.L.C. v. Wilkins*, 102 Ohio St.3d 443, 2004-Ohio-3922, 812 N.E.2d 948, ¶ 23; *Inter Ins. Exch. v. Wagstaff*, 144 Ohio St. 457, 460, 59 N.E.2d 373 (1945).

*Bricker*, No. 1:05 CV 2158, 2010 U.S. Dist. LEXIS 99140, at *45 (N.D. Ohio Sep. 21, 2010). In ruling on the Motion to Dismiss, this Court should disregard 1) any "facts" that are unsupported by citations to the Complaint or are allegedly supported by matters outside the pleadings, 2) the affirmative defense of unclean hands, and 3) any purported breach of contract claim or other baseless threats of "possible antitrust counterclaims" or other "serious repercussions" against the Companies.

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the plaintiff and accept all of the complaint's factual allegations as true. *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). Motions to dismiss should be granted only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Randleman v. Fid. Nat'l Title Ins. Co.*, 465 F. Supp. 2d 812, 817 (N.D. Ohio 2006).

In addition, a court must assess the facial sufficiency of the complaint without resort to matters outside the pleadings. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). Thus, in reviewing a motion to dismiss, the court should not consider matters beyond or outside the complaint. *Local 18 Int'l Union of Operating Eng'rs v. Ohio Contrs. Ass'n*, 644 F. App'x 388, 393 (6th Cir. 2016) (reversing a district court ruling granting a Rule 12(b)(6) motion to dismiss because the court should have "disregard[ed] matters outside the complaint"); *Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001) (finding that if the district court considered defendants' assertions concerning matters outside of the complaint as true, then it "improperly looked outside the complaint in deciding a case on Rule 12(b)(6) grounds."); *Cleveland Indus. Square v. White*, No. 94-3154, 1995 U.S. App. LEXIS 8138, at *3 n. 2 (6th Cir.

Apr. 6, 1995) (noting that information not included in the complaint would be disregarded in reviewing the district court's grant of defendants' motion to dismiss under Rule 12(b)(6)).[2]

Here, the Motion to Dismiss is replete with "facts" that are either unsupported by any citation at all or are supported by citations to sources or other materials outside the pleadings. Most obviously, Direct repeatedly cites to (and attaches as exhibits) a Declaration of Counsel (Exhibit A), an Electric Generation and Supplier Coordination Tariff ("Supplier Tariff") (Attachment 1), and an administrative complaint filed with the Public Utilities Commission of Ohio ("PUCO") (Attachment 2) to support its Motion to Dismiss. Direct also improperly threatens the Companies with "possible antitrust counterclaims" and other "serious repercussions" in the Motion to Dismiss, apparently attempting to invent a controversy that it hopes may distract this Court from Direct's $5.6 million windfall. (Motion to Dismiss, p. 3 n. 2).

---

[2] A district court may consider matters of "public record" in a motion to dismiss under Rule 12(b)(6) if they are central to the claims in the case. *See Ohnemus v. Thompson*, 594 F. App'x 864, 869 (6th Cir. 2014). Here, as explained previously, Direct cites to and attaches, among other things, a Declaration of Counsel that is not a public record. Additionally, while Direct cites to and attaches a complaint before the PUCO (Attachment 2), the PUCO complaint is not central to the Companies' unjust enrichment claim in this case (*i.e.,* the PUCO complaint seeks declaratory and injunctive relief concerning a separate matter under the exclusive jurisdiction of the PUCO, not any monetary relief under a common law claim that is indisputably outside the purview of the PUCO). *See infra* Section III(C). Nevertheless, even if Direct's citations to matters outside the pleadings were considered public records central to the Companies' case (which they are not), when considering public documents in the context of a motion to dismiss, the court may not accept or use a public record to decide facts that are in dispute. *See, e.g., Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623, 634 (N.D. Ohio 2014); *In re Cardinal Health, Inc. Sec. Litigs.*, 426 F. Supp. 2d 688, 713 (S.D. Ohio 2006); *In re FirstEnergy Corp. Sec. Litig.,* 316 F. Supp. 2d 581, 592 (N.D. Ohio 2004) (citing *Hennessy v. Penril Datacomm Networks,* 69 F.3d 1344, 1354-55 (7th Cir. 1995) (holding district court properly refused to take judicial notice of Form 10-K to decide a fact in dispute)). Furthermore, courts have also routinely held that even when a public record central to the case is attached as an exhibit, it is not always appropriate to assume everything in the public record is true. *See Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 441 (6th Cir. 2012); *see also Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623, 634 (N.D. Ohio 2014) (refusing to consider a public record attached as an exhibit to defendant's motion to dismiss where doing so would require the court "to question the evidentiary foundation of plaintiff's complaint, thereby depriving plaintiffs of the presumption of truth to which they are entitled at this stage of the litigation") (citations and quotations omitted). Here, this Court may not use Direct's exhibits and attachments to challenge the underlying factual allegations in the Complaint because to do so would undermine the legal presumption of truth owed to the Companies when reviewing the Motion to Dismiss.

Moreover, Direct improperly invokes an "unclean hands" affirmative defense, and even accuses the Companies of breaching a "covenant" in one of the exhibits attached to the Motion to Dismiss. (*Id.*, p. 10-11).

To compound Direct's errors, Direct's "UNDISPUTED FACTS" section of the Motion to Dismiss is pregnant with *disputed* facts, some of which are entirely unsupported by any citation at all[3] while many others allegedly are supported by materials outside the complaint. (*Id.*, p. 4-6). In fact, the Motion to Dismiss mostly challenges the factual allegations of the Complaint, not its legal sufficiency. Direct even explicitly acknowledges as much:

> "But even if Plaintiffs had alleged the threshold facts, their decision to seek an equitable remedy demands a more complete explanation of this dispute than Plaintiffs have provided. The Complaint omits two critical facts." (*Id*., p. 2).
>
> "The Plaintiffs allege that the 'Harmed Supplier conferred a benefit upon Direct Energy by paying for Direct Energy's load costs[.]' But this is not an accurate description of the facts alleged." (*Id*., p. 8) (citations omitted).

These factual matters, which make up the bulk of Direct's Motion to Dismiss, cannot be decided on a motion to dismiss because this Court's function is to test the *legal* sufficiency of the

---

[3] The Court must disregard the numerous factual allegations in Direct's Motion to Dismiss that lack any supporting citations, including: 1) "Direct filed that complaint in response to Plaintiffs' threats to effectively drive Direct out of business in the Plaintiffs' service territory, unless Direct agreed to write a $5.6 million check for Plaintiffs to sign over to the Harmed Supplier, whom Plaintiffs refused (and still refuse) to identify." (Motion to Dismiss, p. 3); 2) "Plaintiffs' status as the monopoly distribution provider gives them tremendous leverage over retail suppliers. Declaring Direct in breach of the Coordination Agreements would effectively force Direct out of the market in Plaintiffs' service territories. Plaintiffs' threatening tactics left Direct with little choice but to file the PUCO complaint." (*Id*. at p. 6); and 3) "Plaintiffs' breached this covenant by approaching Direct on behalf of the Harmed Supplier to begin with, and they have merely doubled down on that wrongdoing by accepting an assignment and suing Direct in federal court." (*Id*. at p. 11). No matter the level of conspiracy theorizing indulged in by Direct, it cannot avoid the obvious and essential point that the Harmed Supplier bestowed a $5.6 million benefit on Direct by paying for Direct's energy.

Complaint. *See City of Toledo v. Beazer Materials & Services. Inc.*, 833 F.Supp. 646, 650 (N.D. Ohio 1993); *In re Direct Gen. Corp Sec. Litig.*, 398 F. Supp. 2d 888, 894 (M.D. Tenn. 2005).

The Motion to Dismiss contains substantial and fundamental errors by citing to matters outside the pleadings or by alleging "facts" without any supporting citations. As such, this Court should disregard all improper allegations, presume the factual allegations in the Complaint are true, and deny the Motion to Dismiss for the reasons more fully explained in the following section.[4]

## III. THE COMPANIES HAVE STATED AN UNJUST ENRICHMENT CLAIM AGAINST DIRECT

Civil liability for unjust enrichment "arises out of the obligation cast by law upon a person in receipt of benefits for which he is not justly entitled to retain." *Metro. Life Ins. Co. v. Franks*, 10th Dist. Franklin No. 98AP-8, 1998 Ohio App. LEXIS 3794, 1998 WL 514134, at *4 (Aug. 20, 1998). To assert a viable claim for unjust enrichment under Ohio law, a plaintiff must allege: 1) a benefit conferred by the plaintiff upon the defendant; 2) knowledge by the defendant of the benefit; and 3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 465 N.E.2d 1298, 1302 (Ohio 1984) (per curiam).

Notwithstanding Direct's improper inclusion of disputed factual allegations and other immaterial accusations identified in the preceding section, the Motion to Dismiss purports to advance three principal arguments: 1) the Complaint fails to allege facts that support a

---

[4] Treating Direct's Motion to Dismiss as a motion for summary judgment under Rule 56 is not appropriate, given the parties' divergent views about the facts underlying the Complaint and the lack of discovery conducted at this early stage of the litigation. *See 1st Fed. S&L Assn v. U.S. Sterling Capital Corp.*, No. 3:04CV7726, 2005 U.S. Dist. LEXIS 3480, at *3 (N.D. Ohio Mar. 7, 2005) (rejecting "the defendant's implicit invitation" to convert a motion to dismiss into a motion for summary judgment where doing so "would be manifestly unfair, in view of the parties' disparate views about basic facts and the lack of any discovery").

conclusion that the Harmed Supplier conferred a benefit on Direct; 2) the Complaint does not allege facts demonstrating that Direct had knowledge of the benefit; and 3) it would be inequitable to adjudicate this case during the pendency of a parallel administrative proceeding before the PUCO. (Motion to Dismiss, p. 7-11). As explained in greater detail below, Direct is wrong and the Motion to Dismiss should be denied.

### A. The Complaint Sufficiently Alleges that the Harmed Supplier Conferred a Benefit on Direct.

Direct challenges the first element of an unjust enrichment claim, stating that "[a]ny benefit Direct received was not conferred by the Harmed Supplier" but was conferred by PJM – a third party. (*Id.*, p. 6- 7). As such, Direct claims that there was no "economic transaction" between the Harmed Supplier and Direct where one party conferred a benefit on the other as is required to state a claim for unjust enrichment under Ohio law. (*Id*. at p. 8). First, the Complaint does ***not*** allege that any third-party (PJM or otherwise) conferred a benefit on Direct. Instead, the Complaint is clear that the Harmed Suppler conferred a benefit on Direct: "The **Harmed Supplier conferred a benefit upon Direct** by paying for Direct Energy's load costs in the amount of $5,602,981.39, for which Direct Energy has not paid." (Complaint, ¶ 19) (emphasis added). Direct attempts to make complex what is quite simple: because Direct and the Harmed Supplier buy and sell in the same wholesale market cleared by PJM, the Harmed Supplier paid $5.6 million for Direct's energy. This is an obvious economic transaction. As such, the Complaint sufficiently alleges the first element of an unjust enrichment claim.

Recognizing this, Direct does not contest the legal sufficiency of the Complaint; rather, Direct contests the *factual* allegations in the Complaint:

> "The Plaintiffs allege that the 'Harmed Supplier conferred a benefit upon Direct Energy by paying for Direct Energy's load

costs[.]'  **But this is not an accurate description of the facts alleged**." (Motion to Dismiss, p. 8) (emphasis added).

But this Court's function is to test the legal sufficiency of the complaint, not to determine contested factual matters. *See City of Toledo*, 833 F.Supp. at 650.  While Direct may disagree with facts alleged in the Complaint, it is inappropriate and improper to contest factual matters in a 12(b)(6) motion to dismiss. *See Davis v. Lawyers Title Ins. Corp.*, No. 1:06-cv-357, 2007 U.S. Dist. LEXIS 17961, 2007 WL 782158, at *16 (N.D. Ohio Mar. 13, 2007) (finding that factual disputes over whether plaintiff conferred a direct benefit on defendant "cannot be determined in a Motion to Dismiss").

Similarly, Direct argues that the first element of an unjust enrichment claim is not sufficiently pleaded because "[t]here are *no* allegations of any direct exchange of money, services, or other consideration between the Harmed Supplier and Direct." (Motion to Dismiss, p. 7-8) (emphasis in original).  Again, Direct is mistaken in suggesting that there must be a direct contractual relationship between the parties.  To the contrary, under Ohio law, "the concept of unjust enrichment includes not only loss on one side but gain on the other, with a tie of causation between them." *Fairfield Ready Mix v. Walnut Hills Assoc., Ltd.*, 60 Ohio App.3d 1, 3, 572 N.E.2d 114 (1st Dist. 1988) (citing 18 Ohio Jurisprudence 3d (1980) 271, Contracts, Section 343).  The Companies have alleged that the Harmed Supplier incurred a loss by paying for Direct's energy, and that Direct received a corresponding gain by not being charged for that same energy.  The "tie of causation" is the energy itself – but for the Harmed Supplier paying for the energy, Direct would have had to pay $5.6 million for the energy consumed by its own customers.  The unjust enrichment is obvious.

Direct relies on *Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's, Enters.*, 2015-Ohio-4884, 50 N.E.3d 955, ¶ 33-36 (4th Dist.), which in turn relied on *Johnson v. Microsoft*

*Corp*., 106 Ohio St. 3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 21, which involved an application of the indirect purchaser doctrine. In *Johnson*, the plaintiff purchased a Gateway computer that ran Microsoft software, and the plaintiff attempted to assert claims against Microsoft. Because there was an intervening distributor (Gateway) that itself held direct claims against Microsoft, the plaintiff could not assert a claim as an indirect purchaser from Microsoft. *Johnson*, at ¶ 22. The same was true in *Caterpillar*, where the plaintiff purchased a grinder from a distributor and not the manufacturer named as a defendant. *Caterpillar*, at ¶ 36. In contrast to those cases, the Harmed Supplier paid $5.6 million for energy used by Direct's retail customers, thereby bestowing a windfall of $5.6 million on Direct. There is no allegation in the Complaint that PJM purchased this energy from Direct and resold it as a distributor to the Harmed Supplier (any such allegation would not be true, since PJM is merely a financial clearinghouse for energy bought and sold in its energy market (*see* Complaint ¶¶ 9-11)).

This Court's decision in *Randleman v. Fidelity Nat't Title Ins. Co*., 465 F.Supp. 2d 812 (N.D. Ohio 2006) is instructive. The plaintiffs in that case, who had refinanced their homes through various lenders, were allowed to maintain a claim for unjust enrichment against defendant insurance company, who allegedly overcharged those lenders for title insurance on the refinancing transactions. 465 F.Supp. 2d 812, 823-25 (N.D. Ohio 2006). The insurance company argued that the plaintiffs had failed to claim that they directly conferred a benefit on it. *Id*. at 824. The district court rejected this argument finding that even though there was no direct payment between plaintiff homeowners and defendant insurance company, there was a sufficient "transactional nexus" between them to satisfy the first element of an unjust enrichment claim. *Id*. at 825.

In short, the Companies need not allege a "direct exchange of money, services, or other consideration" to satisfy the first element of an unjust enrichment claim. No such requirement is imposed under Ohio law. The Companies sufficiently alleged that the Harmed Supplier conferred a benefit on Direct by paying for $5.6 million of its energy load costs; consequently, the Companies have satisfied the first element of an unjust enrichment claim.

### B. The Complaint Sufficiently Alleges that Direct Had Knowledge of the Benefit.

Direct also claims that the Complaint fails to sufficiently allege that Direct had knowledge of the benefit (*i.e.*, $5.6 million overpayment) conferred on it. (Motion to Dismiss, p. 8-10). But Direct is wrong again. The Complaint alleges:

> "Direct Energy knew that it was obligated to pay for its actual customer load, and Direct Energy knew that it received a $5,602,981.39 windfall by not paying for its actual customer load that was paid for by the Harmed Supplier." (Complaint, ¶ 20).

Direct cannot argue that the Complaint fails to allege that Direct had knowledge of the benefit because it clearly does. Instead, yet again, Direct improperly contests the factual allegations in the Complaint. For instance, Direct launches into a lengthy discussion (without any supporting citations) about how, under its version of the facts, it did not have knowledge of the benefit:

> "Direct *still* does not fully understand the nature and extent of the "error" because Plaintiffs will not provide the most basic information – such as the identity of the Harmed Supplier. Given that Plaintiffs refuse to identify the Harmed Supplier, how *could* Direct "know" that *Harmed Supplier* conferred a benefit? Even after the filing of the Complaint, Direct still does not know who allegedly conferred a benefit upon it." (Motion to Dismiss, p. 9) (emphasis in original).

The Court should decline Direct's invitation to adjudicate factual issues on a Rule 12(b)(6) motion to dismiss, particularly since the name of the Harmed Supplier is irrelevant to the

question of whether Direct received a benefit. Instead, the Court should find that the Complaint sufficiently pleads the second element of an unjust enrichment claim.

Even if the Court were to consider Direct's version of facts (which it should not), the precise factual circumstances surrounding the computer error have no bearing on whether Direct knew that it was receiving a windfall by not paying for the energy used by its retail customers. This is especially true considering that Direct **_never_** disputes that it received the $5.6 million windfall. Instead, the Motion to Dismiss merely disputes the facts surrounding the computer error and the circumstances surrounding the conferral of the benefit.

Further, even if Direct had no knowledge of receiving the $5.6 million windfall "until well after the fact" as alleged in the Motion to Dismiss, Direct nevertheless concedes that it did, in fact, learn of the benefit it received but then refused to remedy it. (*Id.*). Thus, it is undisputed that Direct has the requisite knowledge. Direct is merely attempting to raise a *factual* issue concerning when Direct knew that a benefit had been conferred on it, not a *legal* issue concerning whether the Companies sufficiently alleged that Direct had knowledge of the benefit.[5] As there is no dispute that the Companies sufficiently alleged that Direct knew it received a $5.6 million windfall, the Complaint satisfies this element.

Finally, Direct cites to *Morgan v. Mikhail* to argue that "[w]hat Plaintiffs attempt to characterize as 'knowledge' is really a form of 'passive acceptance' . . ." which Direct contends is insufficient to satisfy the second element of an unjust enrichment claim. (Motion to Dismiss, p. 10). In *Morgan*, plaintiff gave money to defendant to make investments on his behalf, only later

---

[5] Direct also argues, "Plaintiffs own allegations demonstrate that the error was not obvious but obscure: the issue was *not* identified by the Harmed Supplier, and it took up to two years for Plaintiffs to 'discover' the issue." (Motion to Dismiss, p. 9) (emphasis in original). But the timing of the Companies' discovery of the computer error is entirely irrelevant to whether the second element in the unjust enrichment analysis is satisfied. *See Cahill v. Owens*, 2016-Ohio-4972, 67 N.E.3d 1242, ¶ 21 (10th Dist.) (finding that "diligence is not an element of an unjust enrichment claim" where no statute of limitations issue has been raised by the parties).

to discover that defendant used the money for his personal benefit. *Morgan v. Mikhail*, 10th Dist. Franklin Nos. 04AP-195, 04AP-196, 2004-Ohio-5792, ¶ 1. After defendant transferred plaintiff's money to his father's bank account, plaintiff pursued the father for unjust enrichment (among other claims). *Id*. at ¶ 22. The *Morgan* court held that the father's "passive act of permitting [defendant] to deposit money into his bank account" did not constitute sufficient knowledge to support an unjust enrichment claim. *Id*.

Importantly, Direct conveniently omits the fundamental reason behind the *Morgan* court's holding – *i.e.,* the complaint did not contain any allegation "that [father] had any knowledge that [plaintiff] had a claim to the funds." *Morgan*, 2004-Ohio-5792 at ¶ 22. Because "[plaintiff] has not alleged that [father] had any knowledge that the money belonged to [plaintiff]," the court dismissed the unjust enrichment claim. *Id*. But, contrary to *Morgan*, the Companies allege that Direct had knowledge of the benefit. (*See* Complaint, ¶ 20). Accordingly, the *Morgan* decision is inapplicable to this case and unavailing to Direct.

  **C. The Complaint Sufficiently Alleges that It Would Be Unjust and Inequitable to Allow Direct to Retain a $5.6 Million Windfall to Which It Is Not Entitled.**

Direct argues that "there is no need to dwell on the third" element of the Companies' unjust enrichment claim because the first two elements have not been satisfied. (Motion to Dismiss, p. 10). While not surprising that Direct urges the Court not to "dwell" on the equities surrounding its refusal to return a $5.6 million windfall, this Court is uniquely situated to rectify this manifest injustice.

As extensively discussed previously, the Motion to Dismiss heavily relies on matters outside the pleadings, such as citing to an ongoing administrative complaint case before the PUCO ("PUCO Proceeding"). In short, Direct asks this Court to dismiss the Companies' unjust enrichment claim so that the PUCO can resolve the issue. (*Id*.). To the extent the Court chooses

to entertain matters outside the pleadings, it behooves the Companies to correct Direct's misrepresentations about this parallel administrative proceeding. This case is materially different from the PUCO Proceeding for several reasons. First, the PUCO Proceeding only concerns a contractual dispute between Plaintiff and Direct, while this case exclusively concerns a dispute in equity between the Harmed Supplier and Direct. The assignment from the Harmed Supplier to the Companies does not alter this analysis. Put simply, these cases involve different parties and different issues.

Second, the PUCO proceeding involves requests for declaratory and injunctive relief concerning a dispute over the Supplier Tariff governing the relationship between the Companies and Direct, which falls under the exclusive jurisdiction of the PUCO. *See Kazmaier Supermarket v. Toledo Edison Co.*, 61 Ohio St. 3d 147, 154 (1991) ("determining the mutual rights and responsibilities of the parties" regarding tariffs is a matter within the exclusive jurisdiction of the PUCO); *see also State Farm Fire & Cas. Co. v. Cleveland Elec. Illuminating Co.*, 11th Dist. Lake No. 2003-L-032, 2004-Ohio-3506, ¶ 14 ("Since State Farm's claim requires an interpretation of CEI's tariffs . . . it is best accomplished by PUCO and its expert technicians who are familiar with these provisions."). On the other hand, this case merely concerns a common law claim by the Harmed Supplier that involves monetary relief, something which the PUCO is statutorily prohibited from adjudicating or providing. *See, e.g.,* R.C. 4928.16; O.A.C. 4901:1-10-30 (listing available remedies). Thus, it is inaccurate to state that "the PUCO will address that question in the pending complaint," because the PUCO will not and cannot address the Harmed Supplier's unjust enrichment claim, which was assigned to the Plaintiffs. (Motion to Dismiss, p. 10).

Finally, the Complaint sufficiently alleges facts demonstrating that it would be grossly inequitable and unfair for Direct to retain a $5.6 million windfall. Unjust enrichment is available as a cause of action to remedy this exact kind of injustice. For instance, in *Metropolitan Life Ins. Co. v. Franks*, the court held that the retention of a $22,000 overpayment based on a mistaken disbursement constituted unjust enrichment. 10th Dist. Franklin No. 98AP-8, 1998 Ohio App. LEXIS 3794, at *5-6 (Aug. 20, 1998). In *Franks*, defendant received life insurance proceeds as one of two beneficiaries from plaintiff, a life insurance company. *Id*. at *1. Instead of dividing the proceeds equally between the two beneficiaries, plaintiff mistakenly disbursed seventy percent of the proceeds to defendant, resulting in an overpayment of some $22,000 to defendant. *Id*. After discovering its error, plaintiff sought the return of its money but defendant refused, prompting plaintiff to file an unjust enrichment claim against defendant. *Id.* at *2. The *Franks* court held that plaintiff's mistaken overpayment of $22,000 constituted a "monetary benefit," the retention of which "would be unjust." *Id*. at *5-6. Similarly, here, the Court should find that Direct's retention of a $5.6 million overpayment would be unjust. There is simply no legitimate reason for Direct to withhold this money from its rightful owner.

In sum, this Court should find that the Complaint sufficiently alleges that Direct's continued retention of a $5.6 million overpayment is unjust and inequitable.

## IV. CONCLUSION

For the foregoing reasons, the Companies request that the Court deny Direct's Motion to Dismiss because 1) it is rife with improper, disputed factual allegations that are either entirely unsupported or are allegedly supported by citations to matters outside the pleadings, and 2) the Complaint states sufficient factual allegations to support an unjust enrichment claim under Ohio law.

Respectfully submitted,


*/s/ James F. Lang*
James F. Lang (0059668)
Mark T. Keaney (0095318)
CALFEE, HALTER & GRISWOLD LLP
The Calfee Building
1405 East Sixth Street
Cleveland, OH 44114
(216) 622-8200
(216) 241-0816 (fax)
jlang@calfee.com
mkeaney@calfee.com

P. Nikhil Rao (0087476)
FirstEnergy Service Company
76 South Main Street
Akron, Ohio 44308
Telephone: (330) 384-2422
pnrao@firstenergycorp.com


*Attorney for Plaintiffs Ohio Edison Company and The Cleveland Electric Illuminating Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2017, a copy of foregoing Memorandum in Opposition was filed electronically with the Court and adheres to the page limitations for dispositive motions set forth in Local Rule 7(f). Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

></br>

*/s/ James F. Lang*
*Attorney for Plaintiffs Ohio Edison*
*Company and The Cleveland Electric*
*Illuminating Company*