# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| OHIO EDISON COMPANY<br><br>and<br><br>THE CLEVELAND ELECTRIC ILLUMINATING COMPANY,<br><br>    Plaintiffs,<br><br>v.<br><br>DIRECT ENERGY BUSINESS LLC,<br><br>    Defendant. | Case No. 5:17-CV-00746<br><br>Judge Solomon Oliver, Jr.<br><br>Magistrate Judge Thomas M. Parker |

## DEFENDANT'S REPLY MEMORANDUM
## IN SUPPORT OF MOTION TO DISMISS

In deciding whether the Complaint states a claim for unjust enrichment, the Court need look no further than the first sentence of Plaintiffs' memorandum in opposition. The alleged "windfall" reaped by Direct Energy Business, LLC (Direct) was "[d]ue to a computer error made by Plaintiffs." (Mem. Opp. 1.) Plaintiffs thus concede that *they* are the entities responsible for Direct's "windfall." The *Harmed Supplier* has no claim against Direct, and neither do Plaintiffs.

Direct's motion does not require the Court to resolve disputed facts. The motion merely connects the dots between the facts alleged in the Complaint and the reasonable inferences and conclusions flowing therefrom. Plaintiffs' allegations lead to two inescapable conclusions, each of which is fatal to the Complaint.

First, the Harmed Supplier did not confer the alleged "windfall." The Complaint alleges two completely different series of transactions, one involving Direct and the other involving the

Harmed Supplier. (*See* Complaint ¶¶ 13, 14, 19.) The only common denominator in these transactions was Plaintiffs' failure to provide correct information to PJM Interconnection LLC (PJM), which led to Direct being charged too little and the Harmed Supplier being charged too much (assuming, for present purposes, the truth of these allegations). That the benefit and detriment share a causal connection with Plaintiffs' negligence does not establish any economic transaction between the Harmed Supplier and Direct.

Second, according to the Complaint, no one (including Plaintiffs) knew that Plaintiffs had provided erroneous information to PJM until well after the "windfall" had been conferred. (*See* Complaint ¶¶ 13, 15, 20.) Plaintiffs' after-the-fact demand that Direct turn over the alleged windfall to an unidentified third-party does not establish knowledge. To this day, Direct only "knows" what Plaintiffs have alleged.

The best Plaintiffs can do is argue that these facts are "disputed." They are not disputed. Plaintiffs have not identified a single material fact in dispute. The only "dispute" is whether the facts alleged in the Complaint support the inferences Plaintiffs wish the Court to draw. They simply do not. The Complaint alleges separate transactions among Plaintiffs, PJM, Direct, and Harmed Supplier. The *fact* that no exchange of money, property or services occurred between Direct and the Harmed Supplier does not support an inference that the *Harmed Supplier* conferred a benefit upon Direct. Similarly, the *fact* that Plaintiffs themselves had no knowledge that Direct received a benefit, or that the Harmed Supplier incurred a detriment, does not support an inference that Direct had knowledge of the benefit *when it was received*.

To withstand a motion to dismiss, "[m]ore is required than "unadorned, the-defendant-unlawfully-harmed me accusations." *Robins v. Glob. Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 641–42 (N.D. Ohio 2012). The accusations lodged in the Complaint do not even rise to this

2

description. The only harm evident in the Complaint is the harm Plaintiffs admit that *they* inflicted on the Harmed Supplier. Plaintiffs' unadorned, "the-defendant-received-a-windfall" accusations are not sufficient to state a claim for unjust enrichment. The Complaint must be dismissed.

**I.  ARGUMENT**

The Court knows what it may or may not consider in deciding a motion to dismiss, so Direct will not belabor the point about the documents attached to its motion.[1] Plaintiffs take issue with (i) Direct's counsel's declaration (Exhibit A), (ii) the Companies' Supplier Tariff (Attachment 1) and (iii) Direct's PUCO complaint (Attachment 2). Each of these documents are properly before the Court.

The declaration of counsel (Exhibit A) merely authenticates documents submitted with the motion. It does not offer any facts concerning the underlying dispute. "Because Plaintiffs do not question the validity, accuracy or completeness" of the documents, the Court may consider them "without converting the motion into one for summary judgment or allowing discovery." *Robins v. Glob. Fitness Holdings, LLC*, 838 F. Supp. 2d 631, 641–42 (N.D. Ohio 2012).

Similarly, "the Court may consider documents a defendant attaches to a motion to dismiss if those documents are referred to in the complaint and central to a plaintiff's claims." *Id*. The Supplier Tariff (Attachment 1) is referenced in paragraphs 10 and 11 of the Complaint. Plaintiffs deny that the Supplier Tariff is central to their claim (Mem. Opp. 4 fn.2), but that is not

---

[1] Plaintiffs cite three examples of "numerous factual allegations . . . that lack any supporting citations." (Mem. Opp. 5 fn2.) Contrary to making "factual allegations," the quoted sentences plainly set forth inferences and conclusions reasonably drawn from the facts alleged in the Complaint. The same can be said of the two block quotes at page 5 of Plaintiff's memorandum. A fact ("It's raining") is different from an inference or conclusion ("It's wet outside, so it must have rained.") The Court may draw its own conclusion whether the facts alleged in the Complaint support the inferences argued by Direct.

3

what they said in the Complaint. "The Ohio Tariffs set forth the basic requirements for coordination and cooperation between the Companies and Certified Suppliers necessary to ensure that Certified Suppliers can deliver service to their retail customers." Complaint ¶ 10.[2]

Direct's PUCO complaint (Attachment 2) is a public record, and for the sake of completeness and fairness, Direct also attached Plaintiffs' answer. (Exhibit A, Attachment 3.) These documents are cited and attached to the motion to establish the fact that Plaintiffs and Direct are parties to a PUCO dispute arising from the same underlying facts as the dispute here. The fact that Direct filed a PUCO complaint against Plaintiffs is not disputed.

The documents submitted with Direct's motion are offered to round-out Plaintiffs' one-sided and self-serving story, and were offered to the Court expressly for this purpose. (*See* Mem. Opp. 5, quoting Motion to Dismiss at 2 ("The Complaint omits two critical facts.").) The Court's duty to presume the truth of well-pleaded allegations in a complaint does not require the Court to ignore facts and inferences revealed by matters of public record or documents referenced in the Complaint.

### A. Plaintiffs' threadbare allegations reciting the elements of their unjust enrichment claim are insufficient to withstand dismissal.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. More is required than

---

[2] Moreover, as the authors of the Supplier Tariff, Plaintiffs can hardly be heard to complain of any undue prejudice or surprise by this document. Thus, the Court would be well within its authority to convert Direct's motion into a motion for summary judgment. *See Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104–05 (6th Cir. 2010).

unadorned, the-defendant-unlawfully-harmed me accusations." *Robins*, 838 F. Supp. 2d at 641–42 (citations omitted).

The "factual content" alleged in the Complaint does not support a reasonable inference that the Harmed Supplier conferred a benefit to Direct, or that Direct knew it received a benefit by being under-billed by PJM.

      **1.**    **No facts support an inference that the Harmed Supplier conferred a benefit.**

In Plaintiffs' view, because "the Complaint does *not* allege than any third-party (PJM or otherwise) conferred a benefit on Direct," the Court has no choice but to rule that "[t]he Harmed Supplier conferred a benefit upon Direct by paying for Direct Energy's load costs . . . ." (Mem. Opp. 7.) Plaintiffs' assertion is not a *factual* allegation, and the Court need not (and should not) accept it at face value. "To survive a 12(b)(6) motion to dismiss, a plaintiff must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action is not enough." *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 897 (S.D. Ohio 2013) (granting motion to dismiss unjust enrichment claim).

The facts alleged in the Complaint simply do not support an inference or conclusion that the Harmed Supplier paid for Direct's load costs. To the contrary, this allegation evades the critical question: *whom* did the Harmed Supplier pay? The Harmed Supplier did *not* pay Direct. According to the Complaint, Plaintiffs provided erroneous information to PJM. (*See* Complaint ¶ 13.) "*PJM* relied in this incorrect data to charge the Harmed Supplier . . . for energy that should have been charged to Direct Energy." (*Id*. ¶14, emphasis added.) Direct's settlements "*from PJM*" allegedly reflected revenue that was not offset by costs. . . ." (*Id*., emphasis added.) Plaintiffs contacted Direct seeking resettlement of funds "that should have been paid *to PJM*."

5

(*Id*. ¶17, emphasis added.) There are no allegations tying the Harmed Supplier and Direct to an economic transaction.

"[A] plaintiff must establish that a benefit has been conferred *upon that defendant by that particular plaintiff.*" *Bihn*, 980 F. Supp. 2d at 904. To show that a particular plaintiff conferred a benefit on a particular defendant, "an economic transaction must exist between the parties." *Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's Ents., Inc.,* 2015-Ohio-4884, 50 N.E.3d 955, ¶ 35 (4th Dist.), *appeal not allowed*, 145 Ohio St.3d 1444, 2016-Ohio-1596, 48 N.E.3d 583, *citing Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 22.[3] The Complaint alleges no factual content supporting an inference that the Harmed Supplier and Direct were involved in an economic transaction *with each other*.

Plaintiffs argue, "because Direct and the Harmed Supplier buy and sell in the same wholesale market cleared by PJM," there was "an obvious economic transaction." (Mem. Opp. 7.) Plaintiffs continue to miss the point. As alleged in the Complaint, the Harmed Supplier, PJM, and Plaintiffs engaged in economic transactions among themselves. (*See* Complaint ¶¶ 13, 14, 19.) Direct, PJM, and Plaintiffs engaged in *different* economic transactions among themselves. (*See id*.) To suggest that these different transactions are linked because Direct and the Harmed Supplier "buy and sell in the same wholesale market cleared by PJM" is like saying all activity among buyers and sellers in the New York Stock exchange is part-and-parcel of the same "economic transaction," thus giving market participants that sustain losses the right to bring unjust enrichment claims against those experiencing gains. Suffice it to say, Plaintiffs cite no authority for such an expansive definition of an "economic transaction."

---

[3] Considering this authority, Plaintiffs' assertion that they "need not allege a 'direct exchange of money, services, or other consideration' to satisfy the first element of an unjust enrichment claim" is simply wrong. (*See* Mem. Opp. 10.)

6

As alleged in the Complaint, the Harmed Supplier and Direct share a status not dissimilar from any random pair of Plaintiffs' residential customers. Suppose Plaintiffs read two customers' meters incorrectly, resulting in an over-bill to one customer and an under-bill to the other. The customer that paid too much would not have an unjust enrichment claim against the customer that paid too little. Even though the benefit and detriment occurred at the same time and arose from the same error, there would be no tie of causation between the benefit and detriment. *See Gaier v. Midwestern Grp.,* 76 Ohio App. 3d 334, 339, 601 N.E.2d 624, 627 (1991) ("It is the existence of a substantial detriment to the plaintiff, *causally connected to a substantial benefit to the defendant*, that makes it inequitable for the defendant to retain the benefit at the plaintiff's expense . . . ." (emphasis added)). Crying "windfall!" would not give the customer that paid too much a claim against the customer that paid too little.

This is not to say that there are no remedies available to equitably resolve this hypothetical. Although the customers would have no claims against each other, Plaintiffs' contracts and tariffs would settle the parties' rights and responsibilities. The over-billed customer could assert a right to a refund. Plaintiffs could assert a claim against the customer that did not pay the full amount. Both claims would be resolved independently; the refund to one customer would not be contingent on the other customer's payment to Plaintiffs. This is how one would reasonably expect Plaintiffs to resolve such a situation. And this resolution stands in stark contrast to the path Plaintiffs chose here. Sticking with the hypothetical, both customers would probably find it strange if the Plaintiffs disclaimed any responsibility for the billing errors, and instead demanded that one customer write a check to the other.

The Complaint does not, and cannot, allege that the *Harmed Supplier and Direct* were parties to an "economic transaction" in which one conferred a benefit on the other. The benefit

and detriment described in the Complaint resulted from separate transactions involving different parties, and the benefit and detriment existed independent of each other. This is the only reasonable inference to be drawn from the facts alleged in the Complaint.

        2.      **No facts support an inference that Direct had knowledge of the benefit.**

The second required element of an unjust enrichment claim is "the defendant's knowledge of the benefit." *Cantwell Mach. Co. v. Chicago Mach. Co.,* 184 Ohio App.3d 287, 2009-Ohio-4548, 920 N.E.2d 994, ¶ 15. Plaintiffs insist they meet the second element because the Complaint alleges, "Direct Energy knew that it was obligated to pay for its actual customer load . . . and knew that it received a $5,602,981.39 windfall by not paying . . . ." (Mem. Opp. 7.) Left unsaid is *when* Direct knew or could have known these things. The Complaint itself establishes that Direct *could not have known* it received a "windfall."

Plaintiffs' claim that Direct "improperly contests the factual allegations in the Complaint" (Mem. Opp. 10) reflects another fundamental misunderstanding of the distinction between well-pled facts and the conclusory assertion of an element of their claim. It is not sufficient to merely recite the second element of their cause of action. *Bihn*, 980 F. Supp. 2d at 897. Plaintiffs must plead facts sufficient to establish that the element has been met. They have not done so. The facts pled in the Complaint establish only that Direct *could not have had* the requisite knowledge.

To say that the "precise factual circumstances surrounding the computer error have no bearing" on Direct's knowledge is to invite the Court to simply disregard the allegations in the Complaint. (Mem. Opp. 11.) The Supplier Mismatch Issue occurred as early as 2013 but "continued until discovered and corrected by the Companies in late 2015." (Complaint ¶ 13.) The Plaintiffs approached Direct "[a]fter discovering the error." (*Id*. ¶ 15.) The Complaint does not,

and cannot, allege facts showing that either Direct or the Harmed Supplier had reason to believe they were being billed incorrectly by PJM.

Direct's lack of knowledge is not based on mere assertion; it is the only logical conclusion to be drawn from the allegations pled in the Complaint.

### B. Plaintiffs are not entitled to an equitable remedy.

The third element of unjust enrichment requires Plaintiffs to show that "defendant's retention of the benefit . . . would be unjust." *Cantwell*, 184 Ohio App.3d 287 at ¶ 15. Plaintiffs insist that Direct "never disputes" that it received a "windfall," but this does not change the balance of equities. And whether this proceeding and the case before the PUCO are "materially different" is of no moment. (Mem. Opp. 13.) Plaintiffs have asserted an equitable remedy. The Court may certainly consider whether such a remedy is contractually barred.

Plaintiffs make no effort to dispute that the Ohio Tariffs and Coordination Agreements specifically prohibit Plaintiffs' assertion of rights on behalf of third parties. *Compare* Exhibit A, Attachment 1 § XII.C (Plaintiffs "will assume no responsibility for billing between a Certified Supplier and [PJM] or any party other than the Company") *with* Complaint ¶ 22 ("Direct should be required to pay to the Companies as the successor-in-interest to the Harmed Supplier via its assignment of claims to the Companies").

The equities at stake here are far different from *Metropolitan Life*. "Met Life mistakenly disbursed seventy percent of the proceeds to appellant rather than the fifty percent amount dictated by the policy." *Metro. Life Ins. Co. v. Franks*, No. 98AP-8, 1998 WL 514134, at *1 (Ohio Ct. App. Aug. 20, 1998). This was a textbook case of unjust enrichment. Met Life paid too much to a beneficiary; the beneficiary made charitable donations with the money; the beneficiary was required to pay back the money. Met Life did not sue the charitable organizations to whom

9

the beneficiary made donations; those organizations received a "benefit" from Met Life's mistake but they had no economic transactions with Met Life.

In considering equitable principles, it is worth pondering the precedent that would be set by allowing this Complaint to proceed. Plaintiffs have not and cannot cite a case where a court has permitted a plaintiff to maintain a claim for unjust enrichment against a party with whom it had no economic transaction. This is because observers and third-parties do not have a right to bring unjust enrichment claims against anyone and everyone believed to have received a "windfall" at someone else's expense. Participants in economic transactions have remedies, but the rest of the world does not. The Court should not establish a precedent for allowing bystanders to bring unjust enrichment claims.

**II.     CONCLUSION**

The facts alleged in the Complaint do not support the necessary inferences to establish a claim for unjust enrichment. The Complaint should be dismissed.

Dated: June 26, 2017                                         Respectfully submitted,

*/s/ Mark A. Whitt*
Mark A. Whitt
Andrew J. Campbell
**WHITT STURTEVANT LLP**
88 E. Broad St., Suite 1590
Columbus, Ohio 43215
Telephone: (614) 224-3946
Facsimile:  (614) 224-3960
whitt@whitt-sturtevant.com
campbell@whitt-sturtevant.com

ATTORNEYS FOR DIRECT
ENERGY BUSINESS, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2017, a copy of the foregoing Reply Memorandum in Support of Motion to Dismiss was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

*/s/ Mark A. Whitt*
One of the Attorneys for Direct Energy Business, LLC