UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OHIO EDISON COMPANY, *et al.,* | ) | Case No.: 5:17 CV 746 |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| DIRECT ENERGY BUSINESS, LLC, | ) | |
| | ) | |
| | ) | |
| Defendant | ) | <u>ORDER</u> |

Currently pending before the court is Defendant Direct Energy Business, LLC's ("Direct," or "Defendant"), Motion to Dismiss (ECF No. 6). For the following reasons, the court grants Defendant's Motion to Dismiss.

## I. FACTUAL BACKGROUND

### A. Parties

In Ohio, three separate entities – each with their own specific functions – make up the regulated electric service industry. (*See* Complaint, ECF No. 1, at ¶¶ 6,7,9.) First, certified electric service suppliers ("Certified Suppliers") generate and supply electricity to be sold and purchased in the wholesale energy market. (*Id*. at ¶¶ 6,8.) Second, the wholesale energy market is operated by regional transmission organizations ("RTOs") who also operate the electric grids that carry energy from the Certified Suppliers to the electric distribution companies ("Distributors"). (Def.'s Motion to Dismiss, ECF No. 6, at 4.) Third, Distributors distribute electricity to customers. (*Id.* at ¶ 8.) Additionally, Distributors carry the responsibility of providing customer usage data to the RTOs, and

the RTOs function as "clearinghouses" for settling the transactions between Certified Suppliers and customers. (Compl., ECF No. 1, at ¶ 9.)

The parties in this case are each categorized as one of the above-described entities. Defendant is a Certified Supplier that generates and sells electricity in the wholesale market. (*Id.* at ¶ 6.) Plaintiffs, Ohio Edison Company ("OE") and The Cleveland Electric Illuminating Company ("CEI") (collectively, "Plaintiffs"), are Distributors responsible for distributing the electricity that Defendant, and other Certified Suppliers, generate. (*Id.* at ¶ 7.) PJM Interconnection LLC ("PJM"), though not a party to this case, is the RTO which operates the wholesale market in which Plaintiffs and Defendant operate. (*Id.* at ¶¶ 6, 9.) Here, Plaintiffs are responsible for providing PJM with accurate customer energy usage data so that PJM can correctly charge the responsible Certified Supplier for the energy used by each customer. (*Id.* at ¶ 11.)

### B. Supplier Mismatch Issue

If a customer transfers services from one Certified Supplier to another, the customer's load,[1] and the Certified Supplier's associated load costs, should also transfer. (*Id.* at ¶ 11.)

Plaintiffs allege that in 2013 and 2014, three customers switched their electric service from their previous Certified Supplier ("Harmed Supplier") to Direct. (*Id.* at ¶ 12.) When these customers switched services, the Plaintiffs' computer system erroneously continued to report their load costs to PJM as associated with the Harmed Supplier instead of with Direct. (*Id.* at ¶ 13.) This error allegedly continued through late 2015 when Plaintiffs discovered and corrected it. (*Id.*) Thus, Plaintiffs claim that because of the computer error (the "Supplier Mismatch Issue"), PJM charged the Harmed Supplier a total of $5,602,981.39 for energy that should have been charged to Direct.

---

[1] The load refers to a customer's energy usage.

(*Id.* at ¶ 14.) Plaintiffs maintain that, during this time, Direct received revenues from the three new customers without incurring charges for their corresponding load costs. (*Id.*)

On January 27, 2017, Plaintiffs entered into separate settlement and release agreements with the Harmed Supplier, whereby Plaintiffs became the successors-in-interest to any claims the Harmed Supplier may have had against Direct in connection with the Supplier Mismatch Issue. (*Id.* at ¶ 16.) Plaintiffs allege that they contacted Direct "on numerous occasions" seeking to recover the $5,602,981.39 that they believe Direct should have paid to PJM; however, they maintain that Direct has "refused to pay for the services that were incorrectly charged to the Harmed Supplier." (*Id.* at ¶ 17.)

### C. Legal Claims

On April 10, 2017, Plaintiffs filed a Complaint against Defendant, alleging a single claim for unjust enrichment. Plaintiffs request compensatory damages in an amount not less than $5,602,981.39, plus interest and costs, reasonable attorney's fees, and any other additional relief to which the Companies may be entitled. (*Id.* at ¶ 22.)

On May 12, 2017, Defendant filed a Motion to Dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted in accordance with Rule 12(b)(6). On June 12, 2017, Plaintiff filed a Memorandum in Opposition (ECF No. 7) to Defendant's Motion to Dismiss.

### II. LEGAL STANDARD

In ruling on a Rule 12(b)(6) motion to dismiss, the court must construe the complaint in a light most favorable to the plaintiff and accept all well-pleaded factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94, (2007); *Bishop v. Lucent Technologies, Inc.*, 520 F.3d 516, 519 (6th Cir. 2008); *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). The court is not,

however, "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 554, 555 (2007)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 897 (S.D. Ohio 2013) (citing *Twombly*, 550 U.S. at 555). The court may also "disregard allegations contradicted by facts established by exhibits and attached to the pleading." *Girgis v. Countrywide Home Loan, Inc.*, 733 F. Supp. 2d 835, 843 (N.D. Ohio 2010) (quoting *HMS Property Mgmt. Group Inc. v. Miller*, 69 F.3d 537 (Table), 1995 WL 641308 at *3 (6th Cir. Oct. 31, 1995)).

To survive a motion to dismiss, the "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). A complaint must contain facts sufficient "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. While "[t]he plausibility standard is not akin to a 'probability requirement,'. . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III. LAW AND ANALYSIS

Unjust enrichment occurs when "a party retains money or a benefit that in equity or justice belongs to another." *Savett v. Whirlpool Corp.*, No. 12 CV 310, 2012 WL 3780451, at *6 (N.D. Ohio Aug. 31, 2012) (citations omitted). In Ohio, a plaintiff must allege three elements to state a claim for unjust enrichment: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge

by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984). Without addressing the third element, the court finds Plaintiffs' Complaint insufficient in regard to elements one and two.

### A. Benefit Conferred by Plaintiff Upon a Defendant

Plaintiffs allege that "[t]he Harmed Supplier conferred a benefit upon Direct Energy by paying for Direct Energy's load costs in the amount of $5,602,981.39." (Compl., ECF No. 1 at ¶ 4.) If PJM under-billed Defendant by approximately $5.6 million, Defendant undoubtedly received a benefit. However, Plaintiffs have not provided any case law to support their argument that the benefit was conferred upon Defendant by Harmed Supplier. Furthermore, Plaintiffs have not alleged any facts showing that the Harmed Supplier and Direct engaged in an economic transaction with each other.

In Ohio, an unjust enrichment claim is intended "not to compensate the plaintiff for any loss or damage suffered by him but to compensate him for the benefit he has conferred on the defendant." *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005) (quoting *Hughes v. Oberholtzer*, 123 N.E.2d 393, 397 (Ohio 1954)). It is not enough that a plaintiff suffers a loss and a defendant receives a benefit; rather, "a plaintiff must establish that a benefit has been conferred upon that defendant *by that particular plaintiff*." *Bihn*, 980 F. Supp. 2d at 904 (emphasis added). To show that a plaintiff conferred a benefit upon a defendant, "an economic transaction must exist between the parties." *Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's Ents., Inc.*, 50 N.E.3d 955, 967 (Ohio Ct. App. 2015); *see also In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 684 F. Supp. 2d 942, 952 (N.D. Ohio 2009) ("[F]or a plaintiff to confer a benefit on a defendant, an economic

transaction must exist between the parties"), as amended (Nov. 4, 2009).

Notably, courts have permitted "indirect economic transactions" in limited circumstances. *Front-Loading Washer Prod. Liab. Litig.*, 684 F. Supp. 2d at 953. For instance, in *Randleman v. Fid. Nat. Title Ins. Co.*, 465 F. Supp. 2d 812, 823-825 (N.D. Ohio 2006), the court allowed the plaintiffs, who refinanced their homes through various mortgage lenders, to maintain an unjust enrichment claim against the defendant insurer, who allegedly charged those lenders excessive title insurance premiums. The plaintiffs maintained that though they did not transact directly with the defendant, they were actually the defendant's direct customers; the mortgage lenders served as nothing more than pass-through entities. *Id.* at 825. The court held that in that scenario, a sufficient "transactional nexus" existed between the plaintiffs and the defendant, such that the plaintiffs conferred a benefit directly on the defendant. *Id. But see Davis v. Lawyers Title Ins. Corp.*, No. 1:06 CV 357, 2007 WL 782158, at *6 (N.D. Ohio Mar. 13, 2007) (explaining that if one party sells its services to a "retailer or other middleman" "without regard to who the final consumer might be, and there is no allegation that the Defendant had any control over who the retailer chose to sell its products to," a sufficient economic transaction between the parties does not exist).

In contrast to *Randleman*, the court in *Johnson* found that a plaintiff who purchased a Gateway computer could not sue Microsoft for unjust enrichment because she only transacted directly with Gateway. 834 N.E.2d at 799 ("The rule of law is that an indirect purchaser cannot assert a common-law claim for restitution and unjust enrichment against a defendant without establishing that a benefit had been conferred upon that defendant by the purchaser."). In other words, Gateway served as a middleman who severed any direct link between the customer and Microsoft.

-6-

Plaintiffs in this case do not allege a direct transaction between Harmed Supplier and Direct. Rather, Plaintiffs' Complaint describes PJM as a middleman that engaged in separate transactions with each party. Though Plaintiffs attempt to argue that PJM is a passthrough entity like the mortgage lenders in *Randelman*, (Pls.' Opp'n to Def.'s Mot. to Dismiss, ECF No. 7, at 9) (arguing that "PJM is merely a financial clearinghouse"), they allege no facts and provide no argument to support the idea that Harmed Supplier actually sent any money to Direct. Accordingly, the court finds an insufficient transactional nexus between Harmed Supplier and Direct.

Plaintiffs next argue that because the Harmed Supplier and Direct both operate in the same wholesale market, an "obvious economic transaction" exists between the parties. (*Id.* at 7.) However, Plaintiffs provide no caselaw to support this argument, and the court finds it unavailing. As an analogous example, if a transportation company tasked with transporting goods from a manufacturer to a retail store incorrectly billed both the manufacturer and the store, it does not follow that the manufacturer and the store entered into an economic transaction with each other. Rather, each entered into a transaction with the transportation company, and each would expect to remedy their respective billing errors directly with the transportation company. Similarly, in the present case, it does not follow that Harmed Supplier and Direct engaged in an economic transaction with one another simply by operating in the same wholesale energy market.

From the facts Plaintiff has alleged, Direct and the Harmed Supplier did not engage with one another directly or indirectly. Thus, Plaintiff cannot base an unjust enrichment claim where no economic transaction exists. *See City of Cleveland v. Sohio Oil Co.*, No. 78860, 2001 WL 1479233, at *7 (Ohio Ct. App. Nov. 21, 2001) (holding that where a defendant breached its contract with the city by allowing customers to park in its parking lot overnight, the wrongfully obtained parking revenues had been conferred on the defendant by its customers and not by the city.); *Metro Life Ins.*

*Co. v. Franks*, No. 98AP-8. 1998 WL 514134, at *2 (Ohio Ct. App. Aug. 20, 1998) (holding that where a life insurance company mistakenly overpaid one beneficiary to the detriment of the another, the insurance company – not the underpaid beneficiary – conferred the benefit).

Since Plaintiffs fail to allege that the Harmed Supplier entered into any economic transaction with Direct, as required to state a claim for unjust enrichment in Ohio, the court finds that Plaintiffs failed to plead the first element of their unjust enrichment claim.

### B. Knowledge by Direct of the Benefit

Plaintiffs allege that Defendant "knew that it was obliged to pay for its actual customer load, and Direct Energy knew that it received a $5,602,981.39 windfall by not paying for its actual customer load that was paid for by the Harmed Supplier." (Compl., ECF No. 1, at ¶ 20.) However, Plaintiffs allege no facts to show *how* Defendant had knowledge of the benefit. In particular, Plaintiffs' Complaint alleges that *Plaintiffs* had the responsibility to track customer usage data, not Defendant. (Compl., ECF No. 1, at ¶ 11.) Thus, on the facts provided by Plaintiff, the court cannot even infer that Direct had knowledge that it failed to pay for its full customer load. Consequently, the court finds that Plaintiffs allege an improper legal conclusion with no factual support.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Additionally, the complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Although "detailed factual allegations" are not required under the Rule, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (internal quotations omitted). A complaint is insufficient "if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotations omitted). Furthermore, to survive a motion to dismiss, the "complaint must contain either direct or inferential

-8-

allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Mezibov*, 411 F.3d at 716. The Supreme Court has held that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–*but it has not shown*–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (emphasis added) (internal quotations omitted).

Simply put, the mere recitation of an element of a claim, without more, is insufficient to survive a motion to dismiss. Here, Plaintiffs allege that Direct knew it received a "windfall," but offer no facts to support their allegation. (Compl., ECF No. 1, at ¶ 20.) Thus, Plaintiffs provide no facts from which the court can infer more than the "mere possibility" that Defendant had the requisite knowledge. *Iqbal*, 556 U.S. at 679. The court finds that Plaintiffs' allegation of knowledge is merely a recitation of the required element, and consequently, Plaintiffs have not sufficiently plead the element of their claim.

### IV. CONCLUSION

For the foregoing reasons, the court grants Direct Energy Business, LLC's Motion to Dismiss (ECF No. 6).

IT IS SO ORDERED.

> */s/ SOLOMON OLIVER, JR.*
> UNITED STATES DISTRICT JUDGE

July 26, 2017